UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHAZZ CLEVINGER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ADVOCACY HOLDINGS, INC. *et al.*,<br><br>　　　　Defendants. | Civil Action No. 23-1159 (JMC) |
| ADVOCACY HOLDINGS, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CHAZZ CLEVINGER *et al.*,<br><br>　　　　Defendants. | Civil Action No. 23-1176 (JMC) |

**MEMORANDUM OPINION**[1]

The Court has reviewed Advocacy Holdings' Motion for Reconsideration of the Court's order denying its motion for a preliminary injunction, ECF 55, Clevinger's Opposition, ECF 59, and the Parties' arguments at the Motion Hearing held on August 10, 2023. For the reasons that follow, the Court GRANTS, in part, and DENIES, in part, Advocacy Holdings' Motion. The Court ORDERS that Clevinger, CiviClick, Inc., and Superior Campaign Solutions, LLC are enjoined from using Advocacy Holdings' platform design and interface for any purpose, including on any website, platform, or interface.

---

[1] Unless otherwise indicated, the formatting of quoted materials has been modified throughout this opinion, for example, by omitting internal quotation marks and citations, and by incorporating emphases, changes to capitalization, and other bracketed alterations therein. All pincites to documents filed on the docket are to the automatically generated ECF Page ID number that appears at the top of each page.

1

The Parties agree that the Motion should be assessed under Federal Rule of Civil Procedure 59(e). A Rule 59(e) motion is discretionary, and this Court does not have to grant it unless it determinates that there is an intervening change of controlling law, new evidence, or a need to correct a clear error or prevent manifest injustice. *Fox v. Am. Airlines Inc.*, 389 F.3d 1291, 1296 (D.C. Cir. 2004). Rule 59(e) motions are not intended to be "an opportunity to reargue facts and theories upon which a court has already ruled." *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995). It is also not an opportunity for the losing party to argue new issues that could have been raised earlier. *Kattan v. District of Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993). With that standard in mind, the Court finds that it need only revisit its prior determination regarding Clevinger's alleged use of Advocacy Holdings' platform design and interface to develop a website and user interface for CiviClick, because it did not understand the full extent of Clevinger's use of Advocacy Holdings' redesign plans. Now that it appreciates the scope of Clevinger's duplication of Advocacy Holdings' redesign plans, it concludes that allowing Clevinger to continue to use information that he clearly copied from Advocacy Holdings' redesign plans would create a manifest injustice.

In its Motion for Preliminary Injunction, ECF 13, Advocacy Holdings argued that Clevinger's alleged use of its propriety information to create a website and platform for CiviClick constitutes irreparable harm. See ECF 13-1 at 34–35, 42. It represented that Clevinger was involved in the redesign of Advocacy Holdings' website, user interface, and platform. ECF 13-1 at 5–7. It submitted two screenshots, one taken from CiviClick's website, and one taken from Advocacy Holdings' redesign plans, that appeared identical. ECF 13-2 at 3.

In its Memorandum Opinion denying Advocacy Holdings preliminary injunctive relief, the Court explained that it can find irreparable harm if proprietary information is at risk of being

appropriated or revealed. *See, e.g.*, *Council on Am.-Islamic Rels. v. Gaubatz*, 667 F. Supp. 2d 67, 76 (D.D.C. 2009); *Morgan Stanley DW Inc. v. Rothe*, 150 F. Supp. 2d 67, 76–77 (D.D.C. 2001); *Hosp. Staffing Sols., LLC v. Reyes*, 736 F. Supp. 2d 192, 200 (D.D.C. 2010). Looking to the record at the time, the Court observed that the pair of screenshots (one taken from Advocacy Holdings' redesign plans and one taken from CiviClick's website) "look similar," but explained that it could not "make anything out of that at [that] point" due to the "scant record" before it. ECF 52 at 14. Recognizing that Advocacy Holdings may have more evidence that could persuade it that injunctive relief was appropriate at a later date, the Court denied Advocacy Holdings' motion for a preliminary injunction without prejudice. ECF 52 at 3; *see id.* at 14 n.8.

Advocacy Holdings has now submitted additional evidence, including a Supplemental Declaration of Raymond Zenkich. ECF 55-2. From this evidence, the Court finds that Clevinger was heavily involved in the redesign of Advocacy Holdings' website and platform while he was CEO of Advocacy Holdings. ECF 12 ¶¶ 39–48; ECF 55-2 at 2–3, 29–46. The Court further finds that this work was subject to a confidentiality agreement. ECF 55-2 at 4 (excerpting confidentiality provision in vendor contract). The Court also determines that at some point after he resigned as CEO of Advocacy Holdings, but before Advocacy Holdings had an opportunity to implement its redesign plans, Clevinger launched a website and user interface that included identical design elements including the arrangement of panel options, format, graphics, and display features to what appears in Advocacy Holdings' redesign plans. *See* ECF 12 ¶¶ 103–04; ECF 55-2 at 5–27. In webpages available as recently as August 13, 2023, CiviClick's website features graphics with typographical errors that are identical to those in Advocacy Holdings' confidential, unreleased redesign plans. ECF 55-2 at 9.

It is now clear to the Court that the information on CiviClick's website is identical to Advocacy Holdings' redesign plans. It is apparent that Clevinger copied Advocacy Holdings' redesign plans for his own use, and that Clevinger only had access to those plans because he was CEO of Advocacy Holdings. The Court further finds that under the confidentiality agreement, *see* ECF 55-2 at 4, the redesign plans were to be confidential until Advocacy Holdings launched its new platform. The Court therefore concludes that Advocacy Holdings has carried its burden of showing a substantial likelihood of irreparable harm, through evidence supporting its allegation that Clevinger used its proprietary website, user interface, and platform redesign plans to develop a website and user interface for CiviClick.[2] This type of harm has been recognized as irreparable by other courts, in part because it is impossible to quantify—indeed, the use or disclosure of proprietary information is routinely treated as per se irreparable harm. *See, e.g.*, *Gaubatz*, 667 F. Supp. 2d at 76 (finding irreparable harm from use, disclosure, and publishing of internal documents containing proprietary information); *Rothe*, 150 F. Supp. 2d at 76–77 (finding irreparable harm from disclosure of confidential customer information); *Reyes*, 736 F. Supp. 2d at 200 (finding irreparable harm from disclosure of confidential and proprietary information). Advocacy Holdings is further harmed by another incalculable cost: its inability to release the website, user interface, and platform it invested in and created without causing customer confusion or looking like it is the one copying CiviClick.

This Court has previously determined that Advocacy Holdings has demonstrated a substantial likelihood of success on the merits of its breach of fiduciary duty claim through its

---

[2] The Court is not persuaded by Clevinger's argument, raised at the August 10, 2023, hearing, that the webpages do not show what is actually behind the site's paywall and therefore do not establish that Clevinger (or CiviClick) is using Advocacy Holdings' designs for its own platform and interface. The designs are on CiviClick's website. Regardless of what purpose Clevinger is using them for, the Court finds that it is not fair for him to use Advocacy Holdings' redesign plans in any way.

allegations that Clevinger is actively misusing Advocacy Holdings' confidential or proprietary information for his own business advantage, and that finding has not changed. Case No. 23-cv-1176 (D.D.C.), ECF 35 at 3. As it has before, the Court concludes that the balance-of-equities and public-interest factors also favor Advocacy Holdings. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Granting preliminary injunctive relief will allow Advocacy Holdings to protect and use its own propriety information, while allowing Clevinger to make a living. Furthermore, ordering this injunctive relief will prevent Clevinger from benefiting from the use of proprietary information that is not his. As far as the public-interest factor is concerned, the Court finds that the public has no interest in rewarding the use of a company's confidential or proprietary information for personal gain. *See Rothe*, 150 F. Supp. 2d at 79. Having considered the four facts necessary for preliminary injunctive relief—(1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable harm without preliminary injunctive relief, (3) that the balance of equities tips in its favor, and (4) that an injunction serves the public interest, *see Winter*, 555 U.S. at 20—the Court determines that Advocacy Holdings has carried its burden of showing entitlement to some injunctive relief.

For these reasons, the Court GRANTS, in part, and DENIES, in part, Advocacy Holdings' Motion for Reconsideration. The Court ORDERS that Clevinger, CiviClick, Inc., and Superior Campaign Solutions, LLC are enjoined from using Advocacy Holdings' platform design and interface for any purpose, including on any website, platform, or interface.[3]

The Court DENIES Advocacy Holdings' Motion for Reconsideration in all other respects. Because it does not find a basis to revisit it prior determination under Rule 59(e), the Court rests

---

[3] By "redesign plans," the Court refers to any website, design features, user interface, or other information, design features, or data that constitutes Advocacy Holdings' confidential or proprietary information, including the redesign plans featured at ECF 55-2 at 5–27.

on the analysis outlined in its prior order denying Advocacy Holdings injunctive relief at this stage of the litigation. The Court agrees that it can properly enjoin conduct if it finds a party is likely to suffer prospective irreparable harm, even if the harm has not yet occurred, *see* ECF 55 at 3, but believes its prior ruling is accurate that the record does not allow it to make the necessary finding here. To the extent Advocacy Holdings now contends that the Employment Agreement's irreparable-harm stipulation is dispositive and requires the Court to find irreparable harm as to all alleged breaches of the Employment Agreement, the Court notes two things. First, the Court observes that Advocacy Holdings did not raise that argument when it moved for a preliminary injunction. Second, the Court concludes that even if Delaware law governs the Court's determination of what constitutes irreparable harm, *id.* at 5–9, Delaware law is not inconsistent with this Circuit's precedent. Indeed, Advocacy Holdings cites and relies upon at least one Delaware case that stands for the proposition that courts are not required to treat contractual stipulations regarding irreparable harm as dispositive if the facts otherwise do not establish irreparable harm. *See, e.g., Kansas City S. v. Grupo TMM, S.A.*, No. 20518, 2003 WL 22659332, at *5 (Del. Ch. Nov. 4, 2003). Accordingly, the Court will not disturb its prior ruling for the other relief sought at this time.

    **SO ORDERED.**

Date: August 15, 2023

                                                      Hon. Jia M. Cobb
                                                     U.S. District Judge