## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CHAZZ CLEVINGER, | Case No. 1:23-cv-1159-JMC |
| Plaintiff, | |
| v. | |
| ADVOCACY HOLDINGS, INC., and JOHN KOEPKE, and RED CHALK GROUP, LLC, and RAYMOND ZENKICH, | |
| Defendants. | |
| ADVOCACY HOLDINGS, INC., | Case No. 1:23-cv-1176-JMC |
| Plaintiff, | |
| v. | |
| CHAZZ CLEVINGER, and CIVICLICK, INC., and SUPERIOR CAMPAIGN SOLUTIONS, LLC., | |
| Defendants. | |

### CHAZZ CLEVINGER'S OPPOSITION TO DEFENDANTS'
### MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Chazz Clevinger files this Opposition to Defendants Advocacy Holdings, Inc., Red Chalk Group, LLC, John Koepke, and Raymond Zenkich's Motion to Dismiss Plaintiff's Amended Complaint.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iv

INTRODUCTION .............................................................................................1

LEGAL STANDARD .......................................................................................2

ARGUMENT ....................................................................................................3

I.  The FAC Contains Sufficient Factual Allegations to Support a Claim for Assault ..........................................................................................................3

A.  The FAC Contains Sufficient Allegations Establishing that Defendant Koepke Acted with the Intent to Cause Harmful or Offensive Contact to Plaintiff or an Imminent Apprehension of Such Contact ..............................................................................................3

B.  The FAC Contains Sufficient Factual Allegations Establishing that Plaintiff was Put in Immediate Apprehension .............................................4

II.  The FAC Contains Sufficient Factual Allegations to Support a Claim for Wrongful Termination. ..............................................................................5

A.  The FAC Contains Sufficient Allegations Establishing that Plaintiff was Discharged for Refusing to Violate the Law ......................................5

i.  The FAC Contains Sufficient Allegations Establishing that Plaintiff Refused to Violate the Law .................................................6

ii.  The FAC Contains Sufficient Allegations Establishing that Defendant Took an Adverse Personnel Action Against Plaintiff by Constructively Terminating Plaintiff............................7

iii.  There was a Causal Connection Between Plaintiff's Refusal to Engage in Unlawful Discrimination and Defendant's Adverse Employment Actions ......................................................8

B.  The FAC Contains Sufficient Allegations Establishing that Plaintiff Acted in Furtherance of a Public Policy and was Constructively Terminated as a Result...............................................................................8

III.  The FAC Contains Sufficient Facts to Support a Claim for Declaratory Judgment to Hold the Noncompete Agreement Unenforceable Under Delaware and D.C. Law...............................................................................10

IV.    The FAC Contains Sufficient Factual Allegations to Support a Claim for Malicious Prosecution .......................................................................................11

V.    The FAC Contains Sufficient Facts to Support a Claim for Abuse of Process. ...............................................................................................................18

VI.    The FAC Contains Sufficient Factual Allegations to Support Claims for Fraudulent Inducement, Fraudulent Concealment, and Negligent Misrepresentation...............................................................................................21

      A.    Fraudulent Inducement. .........................................................................21

      B.    Fraudulent Concealment ........................................................................23

      C.    Negligent Misrepresentation ..................................................................24

      D.    The Statute of Limitations is an Affirmative Defense that is Not Proper for a Motion to Dismiss Because the Complaint is Not Conclusively Time Barred on its Face .......................................................25

      E.    Whether Plaintiff Reasonably Relied on the Promise of Equity is a Question of Fact That is Not Proper for a Motion to Dismiss ..................27

VII.    The FAC Contains Sufficient Allegations for Claims for Breach of Contract and Those Claims are Not Barred by the Statute of Limitations ..........................27

VIII.    The FAC Contains Sufficient Factual Allegations for Claims for Unjust Enrichment, Which was Properly Pled in the Alternative. .....................................28

IX    The FAC Contains Sufficient Factual Allegations for a Declaratory Judgment to Determine Plaintiff's Ownership Interest in Advocacy Holdings...................................................................................................................29

X.    The FAC Contains Sufficient Factual Allegations for Claims for Wage Theft in Violation of DC Stat. 32-1303, Failure to Pay Accrued Sick Leave and Accrued Vacation Pay, and Wage Theft for Improper Record Keeping ........31

      A.    Wage Theft in Violation of DC Stat. 32-1303 ...........................................31

      B.    Failure to Pay Accrued Sick Leave and Accrued Vacation Pay................32

      C.    Wage Theft for Improper Record Keeping ................................................34

XI.    The FAC Contains Sufficient Factual Allegations for Claims for Breach of Fiduciary Duty .........................................................................................................35

XII.    The FAC Contains Sufficient Factual Allegations for an Equitable Accounting Claim. ..................................................................................36

XIII.   The FAC Contains Sufficient Factual Allegations for an Unpaid Equity Distribution Claim. ........................................................................37

XIV.    The FAC Contains Sufficient Factual Allegations for Claims for Breach of the Implied Covenant of Good Faith and Fair Dealing..........................................38

<u>CONCLUSION</u>....................................................................................................40

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                          **Page(s)**

*Abdelrhman v. Ackerman*
    76 A.3d 883 (D.C. 2013) …………………………………………………………..38

*Acosta Orellana v. CropLife Int'l*
    711 F.Supp.2d 81 (D.D.C. 2010) ………………………………………………………3

*Adirondack Transit Lines, Inc. v. Greyhound Lines, Inc.*
    2023 WL 196245 (D.D.C. Jan. 17, 2023) ……………………………………………11

*Alexander v. Wash. Gas Light Co.*
    481 F.Supp.2d 16 (D.D.C.2006) ………………………………………………...23

*Alford v. Providence Hosp.*
    945 F. Supp. 2d 98 (D.D.C. 2013), *aff'd*, 561 Fed. Appx. 13 (D.C. Cir. 2014) …………23

*Arthur Young & Co. v. Sutherland*
    631 A.2d 354 (D.C. 1993) …………………………………………………………..7

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) …………………………………………………………2

*Atherton v. D.C. Office of the Mayor*
    567 F.3d 672 (D.C. Cir. 2009) …………………………………………………………2

*Bakeir v. Capital City Mortg. Corp.*
    926 F. Supp. 2d 320 (D.D.C. 2013) …………………………………...………………26

*Baron v. Allied Artists Pictures Corp.*
    337 A.2d 653 (1975) …………………………………………………………37

*Bates v. Nw. Human Servs., Inc.*
    466 F. Supp. 2d 69 (D.D.C. 2006) …………………………………………………36

*Behradrezaee v. Dashtara*
    910 A.2d 349 (D.C. 2006) …………………………………………………………36

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) …………………………………………………………2

*Berteau v. Wiener Corp.*
    362 So.2d 806 (La. App. 1978) …………………………………………………………33

*Bissett v. Ply-Gem Industries*
    533 F.2d 142 (5th Cir. 1976) ……………………………………………………………22

*Brathwaite v. Vance Federal Sec. Servs., Inc.*
    613 F. Supp. 2d 38 (D.D.C. 2009) ……………………………………………………..9

*Buddy Sys., Inc. v. Exer-Genie, Inc.*
    545 F.2d 1164 (9th Cir. 1976) …………………………………………………………..11

*Caesar v. Westchester Corp.*
    280 A.3d 176 (D.C. 2022) ……………………………………………………………35

*Carl v. Children's Hosp.*
    702 A.2d 159 (D.C. 1997) ……………………………………………………....5, 8

*Clay v. Howard Univ.*
    128 F. Supp. 3d 22 (D.D.C. 2015) …………………………………………………..5

*Coley v. Bank of Am. Corp.*
    34 F. Supp. 3d 62 (D.D.C. 2014) …………………………………………………2

*Darrow v. Dillingham & Murphy, LLP*
    902 A.2d 135 (D.C. 2006) ……………………………………………………..7

*Deutsch v. Barsky*
    795 A.2d 669 (D.C. 2002) ……………………………………………………10

*Doody v. John Sexton & Co.*
    411 F.2d 1119 (1st Cir. 1969) ………………………………………………...22

*Drake v. McNair*
    993 A.2d 607 (D.C. 2010) ……………………………………………………26

*Eshleman v. Keenan*
    194 A. 40 (1937) ……………………………………………………...37

*Firestone v. Firestone*
    76 F.3d 1205 (D.C. Cir. 1996) …………………………………………………25

*Forras v. Rauf*
    39 F. Supp. 3d 45 (D.D.C. 2014), *aff'd on other grounds,*
    812 F.3d 1102 (D.C. Cir. 2016) ……………………………………………………..3

*FP UC Holdings, LLC v. Hamilton*
    2020 WL 1492783 (Del. Ch. Mar. 27, 2020) ……………………………………………10

*Fredonia Broadcasting Corp., Inc. v. RCA Corp.*
    481 F.2d 781 (5th Cir. 1973) ……………………………………………………22

*Freeman v. Continental Gun Co.*
    381 F.2d 459 (5th Cir. 1967) ……………………………………………………22

*Fruit Industries Research Foundation v. National Cash Register Co.*
    406 F.2d 546 (9th Cir. 1969) ……………………………………………………22

*Gabelli & Co., Inc. v. Liggett Group Inc.*
    479 A.2d 276 (Del. 1984) ………………………………………………………37

*Glasgow v. Camanne Mgmt. Inc.*
    261 A.3d 208 (D.C. 2021) ………………………………………………………29

*Glenn v. Thomas Fortune Fay*
    222 F. Supp. 3d 31 (D.D.C. 2016) ………………………………………………10

*Hall v. Hollywood Credit Clothing Co.*
    147 A.2d 866 (D.C. 1959) ………………………………………………………19

*Harbour v. Univ. Club of Washington*
    610 F. Supp. 3d 123 (D.D.C. 2022) ..……………………………………………34

*Harbridge v. Greyhound Lines, Inc.*
    294 F. Supp. 1059 (E.D. Pa. 1969) ..……………………………………………33

*Havilah Real Prop. Services, LLC v. VLK, LLC*
    108 A.3d 334 (D.C. 2015) ………………………………………………………11

*Heyer v. Schwartz & Associates PLLC*
    319 F. Supp. 3d 299 (D.D.C. 2018) ..……………………………………………24

*Houlahan v. World Wide Ass'n of Specialty Programs & Sch.*
    677 F. Supp. 2d 195 (D.D.C. 2010)……..………………………………………18, 19

*In re Wil-low Cafeterias, Inc.*
    111 F.2d 429 (2d Cir. 1940) ……………………………………………………33

*In re APA Assessment Fee Litig.*
    766 F.3d 39 (D.C. Cir. 2014)……………………………………………………29

*Jones v. Changsila*
    271 F. Supp. 3d 9 (D.D.C. 2017) ………………………………………………..25

*Kamen v. Kemper Fin. Servs., Inc.*
        500 U.S. 90 L.Ed.2d 152 (1991) …………………………………………………...36

*Keister v. AARP Benefits Comm.*
        410 F. Supp. 3d 244 (D.D.C. 2019), *aff'd*, 839 Fed. Appx. 559 (D.C. Cir. 2021) ………21

*Kowal v. MCI Commc'ns Corp.*
        16 F.3d 1271 (D.C. Cir. 1994) …………………………………………………………2

*McQueen v. Woodstream Corp.*
        244 F.R.D. 26 (D.D.C. 2007) ……………………………………………………………26

*Meyers v. Block*
        120 U.S. 206 (1887)…………………………………………………………………...11

*Morowitz v. Marvel*
        423 A.2d 196 (D.C.1980) ………………………………………………………………18

*Moskowitz v. Bantrell, Del.Supr.*
        190 A.2d 749 (1963) …………………………………………………………………37

*Myers v. Alutiiq Int'l Solutions, LLC*
        811 F. Supp. 2d 261 (D.D.C. 2011) ……………………………………………………5

*Nat'l Rifle Ass'n v. Ailes*
        428 A.2d 816 (D.C. 1981) ………………………………………………………………33

*Owens v. National Medical Care, Inc.*
        337 F. Supp. 2d 131 (D.D.C. 2004) ……………………………………………………5, 9

*Paul v. Howard Univ.*
        754 A.2d 297 (D.C. 2000) ………………………………………………………………38

*Perkins v. WCS Constr., LLC*
        2018 WL 5792828 (D.D.C. Nov. 5, 2018)…………………………………………………..5

*Pfeifer v. A.F. Lowes Lumber Co.*
        291 P.2d 744 (1955) …………………………………………………………..……33

*RDP Techs., Inc. v. Cambi AS*
        800 F. Supp. 2d 127 (D.D.C. 2011)…………………………………………………...10

*Robertson v. D.C.*
        269 A.3d 1022 (D.C. 2022), *cert. denied*, 143 S. Ct. 136 (2022) …………………….....9

*Robinson v. Ergo Sols., LLC*
  85 F. Supp. 3d 275 (D.D.C. 2015) …………………………………………..………7

*Robinson v. Securitas Services, Inc.*
  819 F. Supp. 2d 18 (D.D.C. 2011) ……………………………………………....…9

*Rochester Civic Theatre, Inc. v. Ramsay*
  368 F.2d 748 (8th Cir. 1966) ……………………………………………………22

*Sea Search Armada v. Republic of Colombia*
  821 F. Supp. 2d 268 (D.D.C. 2011), *aff'd*, 522 Fed. Appx. 1 (D.C. Cir. 2013) …………27

*Shear v. Nat'l Rifle Ass'n*
  606 F.2d 1251 (D.C. Cir. 1979) …………………………………………………22

*Silberberg v. Becker*
  191 A.3d 324 (D.C. 2018) ………………………………………………………36

*Smith v. Kingsport Press, Inc.*
  366 F.2d 416, 419 (6th Cir. 1966)………………………………………………33

*Smith v. SPNV Holdings, Inc.*
  1987 WL 14676, at *4 (Del. Ch. Oct. 28, 1987)………………………………………37

*Sundberg v. TTR Realty, LLC*
  109 A.3d 1123 (D.C. 2015) …………………………………………………24, 38

*Taylor v. Washington Metro. Area Transit Auth.*
  109 F.Supp.2d 11 (D.D.C.2000) …………………………………………………5, 9

*Textile Workers Union v. Paris Fabric Mills, Inc.*
  92 A.2d 40, 42 (1952) ………………………………………………………....…33

*Toggas v. Wachovia Mortgage, FSB*
  2020 WL 3103966 (D.D.C. June 11, 2020) ……………..…………………………25

*Tsintolas Realty Co. v. Mendez*
  984 A.2d 181 (D.C. 2009) ………………………………………………………27

*U. S. v. 1,557.28 Acres of Land in Osage County, Kansas*
  486 F.2d 445 (10th Cir. 1973) ………………………………………………..22

*UMC Dev., LLC v. Dist. of Columbia*
  120 A.3d 37 (D.C. 2015) …………………………………………………28-29

*United States ex rel. Landis v. Tailwind Sports Corp.*
    51 F. Supp. 3d 9 (D.D.C. 2014) …………………………………………………………25

*Valeo v. J. I. Case Co.*
    18 Wis.2d 578 (1963) …………………………………………………………......33

## INTRODUCTION

The 600 paragraph, 91-page First Amended Complaint ("FAC") contains sufficient facts to support all 28 claims. The FAC contains sufficient facts to support a claim for assault, including facts showing that Defendant John Koepke acted with the intent to cause harmful or offensive contact to Plaintiff or an imminent apprehension of that contact, that Plaintiff was put in immediate apprehension of that contact, and that Plaintiff's apprehension was objectively reasonable. The FAC contains sufficient factual allegations to support a claim for wrongful termination, including allegations that Plaintiff refused to violate the law, that Defendants effectuated adverse employment action by constructively terminating Plaintiff, and that there was a causal connection between Plaintiff's refusal to engage in unlawful discrimination and Defendant's adverse employment action. The FAC likewise contains sufficient allegations that Plaintiff acted in furtherance of a public policy and was constructively terminated as a result.

Moreover, the FAC contains sufficient factual allegations to support a claim for declaratory judgment to hold the noncompete agreement unenforceable under Delaware and District of Columbia law. All elements are pled and Defendants' arguments are fact-based denials which are not properly raised in a motion to dismiss. The FAC contains sufficient factual allegations to support claims for malicious prosecution and abuse of process. The FAC contains sufficient factual allegations to support claims for fraudulent inducement, fraudulent concealment, and negligent misrepresentation. The statute of limitations is an affirmative defense that is not proper in a motion to dismiss because the FAC is not conclusively time barred on its face. Moreover, whether Plaintiff reasonably relied on the promise of equity is a question of fact that is not properly raised in a motion to dismiss.

The FAC contains sufficient factual allegations to support Plaintiff's claims for breach of contract and those claims are likewise not barred by the statute of limitations on the face of the complaint. The claims for unjust enrichment are properly pled in the alternative and those claims are supported by sufficient ultimate facts. The FAC contains sufficient factual allegations to establish a declaratory judgment claim to determine Plaintiff's ownership interest in Advocacy Holdings. The FAC contains sufficient facts for all three statutory employment-related claims, including wage theft in violation of DC Stat. 32-1303, failure to pay accrued sick leave and accrued vacation pay, and wage theft for improper record keeping. The FAC likewise contains sufficient factual allegations to establish claims for breach of fiduciary duty, equitable accounting, and unpaid equity distributions. Finally, the FAC contains sufficient facts to establish a breach of the implied covenant of good faith and fair dealing. Because the FAC contains facts to support all elements of each claim, the motion to dismiss should be denied in its entirety.

## **LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss should be denied when the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). All factual allegations contained in the complaint are accepted as true. *Coley v. Bank of Am. Corp.*, 34 F. Supp. 3d 62, 65 (D.D.C. 2014) (*citing Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009)). The plaintiff is entitled to the benefit of all inferences that can be derived from the facts alleged. *Id.* (*citing Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

## ARGUMENT

**I.     The FAC Contains Sufficient Factual Allegations to Support a Claim for Assault.**

A defendant is liable for assault when (a) the defendant acts intending to cause a harmful or offensive contact or an imminent apprehension of such a contact, and (b) the other party is thereby put in such imminent apprehension. *Forras v. Rauf*, 39 F. Supp. 3d 45, 56 (D.D.C. 2014), *aff'd on other grounds*, 812 F.3d 1102 (D.C. Cir. 2016) (citing *Acosta Orellana v. CropLife Int'l*, 711 F.Supp.2d 81, 92 (D.D.C. 2010)). The FAC contains sufficient facts for both elements.

### A.     The FAC Contains Sufficient Allegations Establishing that Defendant Koepke Acted with the Intent to Cause Harmful or Offensive Contact to Plaintiff or an Imminent Apprehension of Such Contact.

The allegations in Count One easily suffice. Plaintiff alleged that "[i]ntending to cause harmful and offensive contact, and an imminent apprehension of harmful and offensive contact, Defendant Koepke assaulted Plaintiff on January 17, 2023 by threatening to beat up Plaintiff and threatening to use a baseball bat to beat up Plaintiff," by making "contemporaneous aggressive and threatening physical gestures toward Plaintiff" and by "physically lung[ing] at Plaintiff." ECF No. 29 ¶ 265-266.  Plaintiff alleged that by doing so, "Koepke intended to either physically contact Clevinger or at a minimum intended to put Clevinger in imminent apprehension of physical contact." *Id.* ¶ 267.

Moreover, Plaintiff properly alleged that "Defendant Koepke's actions were not merely negligent or reckless" as "Defendant Koepke has a history of combative, aggressive and violent behavior, including without limitation when the Illinois court held Koepke in contempt for interfering with the parental rights of his ex-wife and as the court determined that Koepke is combative and not credible." *Id.* ¶ 270. Plaintiff alleged that "Koepke was not making a joke" and that "Koepke *intended* to cause Clevinger immediate apprehension of physical harm." *Id.* ¶ 271

(emphasis original). Plaintiff made clear that "Defendant Koepke's assault against Plaintiff was intentional" and that "[i]n that moment, Koepke intended to instill in Clevinger actual fear of an actual strike." *Id.* ¶¶ 272, 273. This is more than sufficient to state a claim.

**B.    The FAC Contains Sufficient Factual Allegations Establishing that Plaintiff was Put in Immediate Apprehension.**

Plaintiff alleged that "[a]s a result of Defendant Koepke's intentional conduct toward Plaintiff on January 17, 2023, including but not limited to Koepke's repeated verbal threats and reference to the use of a baseball bat on Plaintiff, Plaintiff was put in reasonable apprehension that such harmful and offensive contact was imminent" and that "the apprehension of physical contact from Koepke that Clevinger experienced was immediate." *Id.* ¶ 269. Plaintiff further alleged that his "feelings of imminent danger were objectively reasonable," that "Koepke's actions and behavior were serious," that "Koepke's lunge was serious," that "Koepke's past erratic behavior was serious," that "Koepke's hot-head temper was serious," that "Koepke's combativeness was serious," that "Koepke's anger was serious," and that "Koepke appeared under pressure and like he easily could have and would have taken the next step to actually strike Plaintiff." *Id.* ¶ 272.

Moreover, Plaintiff made clear that "Koepke's behavior was, is, and continues to be erratic, threatening, and offensive to the average, like-minded individual." *Id.* ¶ 273. Contextually, the "setup of the conference room was such that if physical violence ensued, it would have been difficult for Plaintiff to extricate himself from the room" because "Plaintiff's means of egress were partially blocked by Koepke." *Id.* ¶ 203, 204. Moreover, "if physical violence was initiated by Koepke, Zenkich would have been unable and unlikely to stop it." *Id.* ¶ 205. Furthermore, "Koepke was sitting just a few feet away from Plaintiff and was within striking distance" and "Koepke had the ability to carry out a strike upon Plaintiff from the distance between Koepke and Plaintiff." *Id.* ¶ 206. Moreover, "Koepke lunged forward at Plaintiff, causing Plaintiff to experience imminent

concern for his physical safety." *Id.* ¶ 207. Pursuant to these allegations, this was not just an idle threat to use a baseball bat on Plaintiff at some time in the future. This was assault. The allegations easily suffice to state a claim. Accordingly, the motion to dismiss should be denied.

## II.    The FAC Contains Sufficient Factual Allegations to Support a Claim for Wrongful Termination.

An at-will employee can bring a claim for wrongful termination against his employer if the employee was discharged for refusing to violate the law. *Perkins v. WCS Constr.*, LLC, 2018 WL 5792828, at *3–5 (D.D.C. Nov. 5, 2018). The employee can also bring a wrongful termination claim when he "acted in furtherance of a public policy solidly based on a statute or regulation, or (if appropriate) on a constitutional provision concretely applicable to the defendant's conduct . . . and was terminated as a result." *Id.* at *3 (citing *Myers v. Alutiiq Int'l Solutions, LLC*, 811 F. Supp. 2d 261, 266–67 (D.D.C. 2011); *Carl v. Children's Hosp.*, 702 A.2d 159 (D.C. 1997)). In that second scenario, the plaintiff must (1) identify a "policy that has been officially declared in a statute or municipal regulation, or in the Constitution," and (2) show that there is a "close fit" between the policy and the conduct at issue in the wrongful termination. *Perkins*, 2018 WL 5792828, at *3 (citing *Clay v. Howard Univ.*, 128 F. Supp. 3d 22, 27 (D.D.C. 2015)).

### A.    The FAC Contains Sufficient Allegations Establishing that Plaintiff was Discharged for Refusing to Violate the Law.

When discharged for refusing to violate the law, the plaintiff must show that (1) the plaintiff engaged in a protected activity, i.e., refused to violate the law; (2) the employer took an adverse personnel action against him; and (3) there was a causal connection between the two. *Owens v. Nat'l Med. Care, Inc.*, 337 F. Supp. 2d 131, 137 (D.D.C. 2004) (citing *Taylor v. Washington Metro. Area Transit Auth.*, 109 F.Supp.2d 11, 16 (D.D.C.2000)).

### i.    The FAC Contains Sufficient Allegations Establishing that Plaintiff Refused to Violate the Law.

Pursuant to the FAC, "Advocacy Holdings, through Koepke, implemented a discriminatory policy whereby Plaintiff was told to unlawfully discriminate by abstaining from hiring employees from protected classes in terms of race and gender." ECF No. 29 ¶ 278. For example, "[o]n January 10, 2019, Koepke emailed Plaintiff, copied to Zenkich, and Koepke stated that 'we need to find a quality CTO as soon as reasonably possible without taking on excessive employment risk.'" *Id.* ¶ 58. That "CTO who had just been fired was a member of a protected class" and "Koepke and Red Chalk were expressly dictating to Plaintiff that the organization's policy is to avoid hiring members of protected classes, including race and gender." *Id.* Koepke and Red Chalk would frequently make comments about protected classes "feeling entitled," and Koepke and Red Chalk actively discouraged Plaintiff from hiring racial minorities and females. *Id.* ¶ 59. Plaintiff "disregarded the discriminatory policies of Koepke and Red Chalk." *Id.*

Moreover, on December 16, 2019, after Plaintiff hired two African American employees, Koepke instructed Plaintiff to "be careful with protected classes" because "[o]nce we hire these people, we can never let them go." Plaintiff again "disregarded Koepke and Red Chalk's express policy to discriminate against members of protected classes." *Id.* ¶ 67. On March 30, 2022, Koepke instructed Plaintiff that "[y]ou really need to stop hiring people from protected classes" because "[t]hey cause too many headaches and too much trouble, and you can never get rid of them." *Id.* ¶ 136. Moreover, while on "a call on June 5, 2022, when referring to potentially firing a minority employee, Koepke remarked that the company had 'protected class issues now with a lot of these people.'" *Id.* ¶ 142. Plaintiff refused to adhere to Red Chalk's discriminatory policies. Instead, he "engaged in protective activity and refused to violate the discrimination laws." *Id.* ¶ 279.

6

**ii.     The FAC Contains Sufficient Allegations Establishing that Defendant Took an Adverse Personnel Action Against Plaintiff by Constructively Terminating Plaintiff.**

Pursuant to the FAC, Defendant Koepke took adverse employment actions against Plaintiff as a result of Plaintiff's refusal to engage in invidious discrimination, including a reduction of Plaintiff's commission rate, a threat to cut Plaintiff's salary, and a threat to fire Plaintiff. *Id.* ¶ 280. Moreover, Defendants' unlawful actions "led to Plaintiff's constructive termination due to a hostile workplace." *Id.* ¶ 281. Defendants' conduct was "frequent, consistent, severe, threatening, and humiliating, and not merely offensive," and it "unreasonably and pervasively interfered with Plaintiff's performance." *Id.* ¶¶ 286-287.

A constructive discharge occurs when the employer "deliberately makes working conditions intolerable and drives the employee into an involuntary quit." *Darrow v. Dillingham & Murphy, LLP*, 902 A.2d 135, 138 (D.C. 2006). The intolerability of the working conditions is judged by an objective standard, not by the employee's subjective feelings. *Id.* Essentially, *the factfinder* must answer the following question: "Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" *Robinson v. Ergo Sols., LLC*, 85 F. Supp. 3d 275, 283 (D.D.C. 2015). Whether the working conditions objectively were so intolerable "is a question for the trier of fact." *Darrow*, 902 A.2d at 138 (citing *Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 362 (D.C. 1993)).

The facts here easily suffice to survive a motion to dismiss. Defendants berated and belittled Plaintiff. Defendants repeatedly cursed at Plaintiff. Defendants made fun of Plaintiff's weight and eating habits, and questioned Plaintiff's marital status. Defendant Koepke physically threatened Plaintiff and assaulted him. A reasonable jury could find that these facts would compel

a reasonable person to feel they have no choice but to resign. Accordingly, the motion to dismiss should be denied.

      **iii.**    **There was a Causal Connection Between Plaintiff's Refusal to Engage in Unlawful Discrimination and Defendant's Adverse Employment Actions.**

There was a direct causal connection, and close fit, between Plaintiff's refusal to engage in unlawful discrimination and the adverse employment actions taken against Plaintiff. This includes the actions which resulted in Plaintiff's constructive termination. *Id.* ¶ 282. As comprehensively discussed in the FAC, Defendants Advocacy Holdings and Koepke also wrongfully retaliated against Plaintiff after Plaintiff informed Defendants of the D.C. law making certain noncompete agreements unenforceable. *Id.* ¶ 283. Overall, Defendants Advocacy Holdings and Koepke intentionally made working conditions at Advocacy Holdings so objectively intolerable that Plaintiff was driven to involuntarily resign. *Id.* ¶ 284. After being told to engage in unlawful discrimination on a regular basis, and after being punished for refusing to violate the law, and then after being physically threatened with a baseball bat, any reasonable person would find that working the conditions at Advocacy Holdings were intolerable. *Id.* ¶ 285. Accordingly, the TAC contains sufficient facts for a claim for a wrongful termination claim and the motion to dismiss should be denied.

      **B.**    **The FAC Contains Sufficient Allegations Establishing that Plaintiff Acted in Furtherance of a Public Policy and was Constructively Terminated as a Result.**

In a claim for wrongful termination for acting in furtherance of a public policy, the employee does not need to point to a law prohibiting the *exact* conduct the employer engaged in to prevail. *Perkins*, 2018 WL 5792828, at *5. Instead, the court considers if the conduct in which the employer engaged was "sufficiently within the scope of the policy embodied in the statute." *Id.* (citing *Carl*, 702 A.2d at 165 (Terry, J., concurring)). Here, there is a clear public policy against

workplace discrimination and against retaliation for the invocation of rights under Title II of the Civil Rights Act of 1964. *Robertson v. D.C.*, 269 A.3d 1022, 1033–34 (D.C. 2022), *cert. denied*, 143 S. Ct. 136 (2022) (citing Title II of the Civil Rights Act of 1964).

Moreover, there are sufficient facts showing a "close fit" between Plaintiff's actions in furthering the public policies prohibiting workforce discrimination and Plaintiff's constructive termination. To examine the "close fit," courts focus on whether the employer provided any evidence of an alternate reason for the employee's termination. *Perkins*, 2018 WL 5792828, at *8 (citing *Robinson v. Securitas Services, Inc.*, 819 F. Supp. 2d 18, 20-21 (D.D.C. 2011) (finding no causal link when evidence showed that employee was fired for deficient performance); *Brathwaite v. Vance Federal Sec. Servs., Inc.*, 613 F. Supp. 2d 38, 50 (D.D.C. 2009) (finding no causal link when evidence showed that employee was fired for instigating fight with another employee)). Some courts also consider the temporal proximity standard used for Title VII claims in this Circuit for this "close fit" analysis. *Perkins*, 2018 WL 5792828, at *8 (citing *Owens v. National Medical Care, Inc.*, 337 F. Supp. 2d 131, 137 (D.D.C. 2004); *Taylor v. Washington Metropolitan Area Transit Auth.*, 109 F. Supp. 2d 11, 16 (D.D.C. 2000)). Here, the FAC contains sufficient facts showing a close fit. Defendants provided no alternative reason for their constructive termination of Plaintiff. Moreover, temporarily, the most recent discriminatory acts occurred in March and June 2022, while Defendants' actions constructively terminating Plaintiff were taking place. Defendants' arguments to the contrary are fact-based and not suitable for a motion to dismiss. Because the TAC contains sufficient allegations to support a wrongful termination claim, the motion to dismiss should be denied.

III.     **The FAC Contains Sufficient Facts to Support a Claim for Declaratory Judgment to Hold the Noncompete Agreement Unenforceable Under Delaware and D.C. Law.**

The Declaratory Judgment Act permits federal courts to "declare the rights and other legal relations of any interested party seeking such declaration." *RDP Techs., Inc. v. Cambi AS*, 800 F. Supp. 2d 127, 136 (D.D.C. 2011) (citing 28 U.S.C. § 2201(a)). To obtain declaratory relief, the court must find that (1) there is an actual, substantial controversy, (2) involving an interested party, which (3) warrants the immediate issuance of a declaratory judgment. *Glenn v. Thomas Fortune Fay*, 222 F. Supp. 3d 31, 35 (D.D.C. 2016). Here, there is clearly an actual, substantial controversy among the parties about the enforceability of the noncompete agreement. Plaintiff and Defendants are undoubtedly interested parties in the outcome of the Court's decision on whether the noncompete agreement is enforceable. And the controversy regarding the enforceability of the noncompete agreement warrants the immediate issuance of a declaratory judgment. Plaintiff stated a claim for declaratory relief and the motion to dismiss should be denied.

Defendants' arguments in the motion to dismiss address *none* of these elements. Instead, Defendants' arguments all go to the factual merits of the controversy for which Plaintiff seeks a declaratory judgment, the merits of the enforceability of the noncompete. Defendants assert a multitude of disputed facts regarding the enforceability of the noncompete, including facts wholly outside the four-corners of the FAC. This is entirely improper for a motion to dismiss. *See, e.g.*, *FP UC Holdings, LLC v. Hamilton*, 2020 WL 1492783, at *8 (Del. Ch. Mar. 27, 2020) (holding whether to enforce or modify the noncompete agreement is a "fact-intensive question" that the court is "not able to resolve on this record"); *Deutsch v. Barsky*, 795 A.2d 669, 678 (D.C. 2002) (holding genuine issues of material fact as to whether the restraint was greater than was needed to protect company's legitimate interest and as to the hardship to the other party if the restraint was enforced precluded summary judgment based on the unenforceability of the covenant not to

compete, in action for declaratory and injunctive relief, in which plaintiff sought to enforce covenant not to compete executed in connection with defendant's purchase of stock in professional corporation). The parties can address the merits of their respective arguments on the enforceability of the noncompete agreement pursuant to a properly developed factual record. However, at the pleadings stage, the motion to dismiss should be denied.

## IV.   The FAC Contains Sufficient Factual Allegations to Support a Claim for Malicious Prosecution.

A claim for malicious prosecution contains the following elements: (1) the underlying suit terminated in the plaintiff's favor; (2) there was malice on the part of the defendant in filing the underlying suit; (3) there was a lack of probable cause for the underlying suit; and (4) that the plaintiff suffered a special injury as a result of the suit. *Havilah Real Prop. Services, LLC v. VLK, LLC*, 108 A.3d 334, 354 (D.C. 2015). Moreover, without a bond or other obligation for the payment of damages, a party against whom an injunction wrongfully issues can recover nothing but costs <u>unless he can make out a case of malicious prosecution</u>. *Meyers v. Block*, 120 U.S. 206 (1887); *Adirondack Transit Lines, Inc. v. Greyhound Lines, Inc.*, 2023 WL 196245, at *10 (D.D.C. Jan. 17, 2023) (citing *Buddy Sys., Inc. v. Exer-Genie, Inc.*, 545 F.2d 1164, 1167 (9th Cir. 1976)). For liability on an improperly issued injunction, "there is no difference between a preliminary injunction and a TRO." *Adirondack Transit Lines, Inc.*, 2023 WL 196245, at *10.

Here, the FAC contains sufficient facts to support all elements for malicious prosecution. The underlying suit terminated in Plaintiff's favor as the Virgina court found it lacked personal jurisdiction. The facts alleged show malice, and there was a lack of probable cause for the underlying suit as Defendants *knew* Plaintiff did not reside in Virginia and *knew* they failed to make efforts to notify Plaintiff of the motion for a TRO. Moreover, Plaintiff suffered a special injury as a result of the suit because he was unable to attend conferences and run his business.

11

Dating back to November 24, 2019, Plaintiff informed Defendants that Plaintiff resides in the District of Columbia. ECF No. 29 ¶ 336. At all relevant times since November 24, 2019, Defendants have known that Plaintiff resides in the District of Columbia. *Id.* ¶ 337. In early February 2023, Advocacy Holdings and Koepke mailed Plaintiff's January 31, 2023 paycheck to Plaintiff's District of Columbia address. *Id.* ¶ 344. Less than two months later, on March 30, 2023, Advocacy Holdings filed a "Verified Complaint" containing perjury in the United States District Court for the Eastern District of Virginia, styled Advocacy Holdings, Inc. v. Chazz Clevinger, 1:23-cv-00419 (the "Underlying Suit" or the "Virginia lawsuit"). *Id.* ¶ 345. On behalf of Advocacy Holdings, Defendant Koepke falsely represented to the United States District Court for the Eastern District of Virginia under oath that, "Clevinger is an individual who currently resides at 9030 Timberwolf Court in Vienna, Virginia… He has been a resident and domiciliary of Virginia since 2011… Clevinger is a citizen of the Commonwealth of Virginia for diversity jurisdiction purposes." *Id.* ¶ 347. On behalf of Advocacy Holdings, Defendant Koepke further falsely swore under oath that Plaintiff "has been domiciled in the Commonwealth of Virginia at all relevant times and for at least six months preceding the initiation of this lawsuit." *Id.* ¶ 348. While Defendant Koepke falsely swore under oath on March 30, 2023 that Plaintiff was a resident of Virginia, and that he had been a resident of Virginia since 2011, and for the six months preceding the lawsuit, Defendant Koepke and Defendant Advocacy Holdings were fully aware at that time that Plaintiff was a resident of the District of Columbia and not Virginia. *Id.* ¶ 349.

On March 30, 2023, Defendant Advocacy Holdings filed a "Motion for Temporary Restraining Order," and in that motion, Defendant Advocacy Holdings' attorney, Anand Ramana, falsely represented to the tribunal that he satisfied the Fed. R. Civ. P. 65(b)(1) requirement that "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it

should not be required." *Id.* ¶ 350. Despite the false certification regarding notice, Defendant Advocacy Holdings' attorney failed to provide any notice to Plaintiff's attorney in advance of the March 31, 2023 ex parte hearing on a temporary restraining order. *Id.* ¶ 351. The certification was false, as Plaintiff and Plaintiff's counsel had not heard from Defendants' attorney since February 13, 2023. *Id.* ¶ 352. On March 30, 2023, without any citation or evidentiary support, Ramana signed and filed "Plaintiff's Motion for Temporary Restraining Order," representing to the tribunal without evidence that "[i]n less than a month of CiviClick 'going live,' Defendant Clevinger has successfully stolen almost $1 million in OCP's business." *Id.* ¶ 353. 354. Without providing any notice to the undersigned counsel for Plaintiff, with whom Ramana corresponded in February 2023, Ramana calendared a March 31, 2023 hearing on the March 30, 2023 Motion for Temporary Restraining Order in Virginia. *Id.* ¶ 354.

Still without having provided any notice to Clevinger or his counsel, at the March 31, 2023 ex parte hearing on the Motion for Temporary Restraining Order in the United States District Court for the Eastern District of Virginia, Ramana made inappropriate and disparaging remarks about Plaintiff on the record on an ex parte basis as Ramana stated, "[w]hat I'm starting to learn is he [Clevinger] can be a little squirrelly, and he's -- he's tough to find. So, we have his address..." *Id.* ¶ 355. Ramana, on behalf of Advocacy Holdings, was essentially representing to the Court, falsely, that Clevinger was avoiding service in Virginia, when Clevinger clearly did not reside in Virginia and Ramana was well-aware of that fact. *Id.* ¶ 356. Advocacy Holdings apparently convinced the court in the Eastern District of Virginia that its counsel complied with the notice requirements under Rule 65(b)(1), but the Rule 65 certification was false and Advocacy Holdings provided no notice at all. *Id.* ¶ 357. Advocacy Holdings' March 30, 2023 Motion for Temporary Restraining Order contained no "specific facts in an affidavit or a verified complaint [which] clearly show that

immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" as required by Fed. R. Civ. P. 65(b)(1)(A) and the motion lacked the required Fed. R. Civ. P. 65(b)(1)(B) certification of the moving party's counsel whereby "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." *Id.* ¶ 358.

Instead of a Rule 65(b)(1)(B) certification of counsel, whereby "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required," Ramana represented as follows to the tribunal in the TRO memorandum, "the undersigned counsel certifies that, in February 2023, he made efforts to avoid this lawsuit by sending a cease and desist letter to Mr. Clevinger's Florida lawyer. *Id.* ¶ 360.While that lawyer stated he would respond, he never did." Id. at 9. 360. Ramana's statement about communications in February 2023 about a lawsuit which had not even been filed is obviously not compliant under Rule 65(b)(1)(B). *Id.* Without question, those representations about February 2023 communications are not a Rule 65 certification of "any efforts made to give notice and the reasons why it should not be required." No efforts were made "to give notice" Clevinger's counsel before the March 31, 2023 TRO hearing. *Id.*

Moreover, Ramana's faux certification itself was a misrepresentation. *Id.* ¶ 361. Ramana represented to the tribunal that "Clevinger's Florida lawyer" never responded, but Clevinger's undersigned counsel did respond as he emailed Ramana on February 22, 2023 with a letter and another attachment in response to Ramana's February 13, 2023 email. *Id.* ¶ 362. And Ramana failed to respond Clevinger's counsel's February 22, 2023 email. *Id.* Advocacy Holdings' original TRO contained false statements and it lacked a Rule 65 certification. *Id.* ¶ 363. Yet, Advocacy Holdings and its counsel moved forward on it anyway while they knew or should have known that

14

their actions were improper. *Id.* Advocacy Holdings improperly obtained a temporary restraining order which should be declared null and void. *Id.* ¶ 364. At the March 31, 2023 improper ex parte TRO hearing, Ramana handed the presiding judge a proposed "Order Granting Plaintiff's Emergency Motion for Temporary Restraining Order," which the judge signed at 10:22 am without modification. Advocacy Holdings. *Id.* ¶ 365. But Fed. R. Civ. P. 65(b)(2) unambiguously provides that "[e]very temporary restraining order issued without notice must [] state why the order was issued without notice" and the March 31, 2023 TRO did not "state why the order was issued without notice." *Id.* Moreover, Fed. R. Civ. P. 65(b)(2) provides that the order is "not to exceed 14 days," but the TRO plainly spanned 17 days from March 31, 2023 to April 17, 2023. *Id.*

Not only was the TRO improperly obtained, the March 31, 2023 TRO itself was facially void. *Id.* Advocacy Holdings made frivolous arguments and multiple false statements in the Virginia case. *Id.* ¶ 366. On April 13, 2023, Clevinger filed a motion to dismiss supported by 12 exhibits and five affidavits, including affidavits from a neighbor and building manager at Clevinger's Washington, DC residential address that was provided to Koepke in writing, dating back to 2021, in addition to leases and utility bills. *Id.* ¶ 367.

Earlier in the day on April 13, 2023, Advocacy Holdings filed a motion and represented to the tribunal that Clevinger's "landlord [from 2018-2019 in Virginia supposedly] explained [to an unknown person] that Defendant Clevinger abruptly terminated his tenancy and did not leave a forwarding address." *Id.* ¶ 368. This statement (if it was ever made in the first place) is misleading because Koepke clearly had Clevinger's Washington, DC "forwarding address" and Koepke had been using Clevinger's Washington, DC address since 2020. *Id.* ¶ 369. On April 14, 2023, despite the obvious lack of jurisdiction in Virginia, given that none of the parties are residents of Virginia,

Ramana insisted that the improper TRO, which was obtained on an ex parte basis, be extended another 14 days. *Id.* ¶ 370.

Ramana also falsely represented to the tribunal as follows, "Rule 65 obviously allows us to go in ex parte." *Id.* ¶ 371. Ramana did not mention that he failed to include a Rule 65(b)(1) certification in the motion for TRO. *Id.* Over Clevinger counsel's objection, based on the improperly-obtained ex parte TRO, obtained with a false Rule 65 certification, and the perjury in Advocacy Holdings' filings the court extended the TRO until April 24, 2023 when the motion to dismiss was scheduled to be heard. *Id.* ¶ 372. This was also prejudicial to Clevinger and it resulted in special damages. *Id.* On April 19, 2023, Advocacy Holdings filed an opposition to the motion to dismiss, asserting that the absence of personal jurisdiction in Virginia is purportedly "provably wrong." *Id.* ¶ 373. Advocacy Holdings then pointed to an "Accurint" investigative report, which purportedly "shows that Defendant Clevinger supposedly still lives in Vienna, Virginia." *Id.* ¶ 375. But the "Accurint" report that Advocacy Holdings improperly published on April 19, 2023, containing personally identifiable information of Clevinger and his family members, was not the correct time-stamped version which was actually relied upon. *Id.* ¶ 376. The correct Accurint report, dated February 10, 2023 subsequently provided by Ramana, plainly reflects Clevinger's address as "1515 15th Street NW, Apt. 416, Washington, DC 20005." *Id.* ¶ 377. Accordingly, Advocacy Holdings and Ramana provided no valid explanation for Koepke's false statements regarding Clevinger's residence.

On April 24, 2023, the Virginia court rejected Ramana's attempt to compare bank routing numbers to real estate and the court ruled as follows, "I do find that there is no jurisdiction in this -- in this case. I think it's clear from the submissions here that this defendant is a resident of the District of Columbia." *Id.* ¶ 378. Regarding the TRO, the court held, "[t]hat expired at -- as of

now. Or if it didn't, it expired at noon today." Id. at 290:22-23. As of April 24, 2023, the TRO had been discharged due to expiration. *Id.* ¶ 379. Defendant Koepke's false statements under oath and Defendants' counsel's false certification regarding notice, as well as false representations at the ex parte hearing, caused the United States District Court for the Eastern District of Virginia to issue an ex parte temporary restraining order, which resulted in a special injury to Plaintiff. *Id.* ¶ 380. Defendants failed to explain why Defendant Koepke falsely represented to the court that Plaintiff was a resident of Virginia when Koepke knew that Plaintiff had resided in the District of Columbia since 2019. *Id.* ¶ 381.

The Underlying Suit was terminated in Plaintiff's favor. The prosecution of the Underlying Suit by Defendants was undertaken with malice.  The Underlying Suit was predicated on Defendant Koepke's false statements under oath and Defendants were aware of the falsity of their representations when made. Defendants' malice is shown through Defendants' willful, wanton, reckless, and oppressive disregard for the rights of Plaintiff. Defendants lacked probable cause to have filed the Underlying Suit, which was based on perjury. The facts and circumstances, including Defendants' knowledge of Plaintiff's DC address coupled with the false attestation as to a Virginia address, would warrant a cautious man to believe that the action and the means taken in prosecuting it are not legally just and proper.

Plaintiff sustained a special injury as a result of Defendants' misconduct. After Defendants wrongfully obtained an ex parte temporary restraining order, based on perjury and a false certification regarding notice, Defendants used the TRO to inhibit and prevent Plaintiff from conducting his business and from engaging in lawful commerce. As a result of Defendants' wrongful acts, Plaintiff was required to cancel appearances at multiple conferences and other client events. Plaintiff was also forced to abstain from and deterred from engaging in other commercial

enterprises. *Id.* ¶ 389. As a result of the special injury, Plaintiff lost a substantial amount of business and opportunities to develop business. *Id.* ¶ 390. The special injury to Plaintiff is beyond that which would normally be incurred in regular litigation. Plaintiff's rights were flagrantly violated and Defendants' actions were predicated on perjury and a false certification regarding notice. The Court should not tolerate this abuse of process.

After the falsity of Defendants' statements was shown through five affidavits and 12 exhibits, Defendants insisted on perpetuating their misconduct as Defendants argued for, and obtained, a renewal of the improperly obtained ex parte TRO. These actions exacerbated the special damages to Plaintiff. Plaintiff was damaged beyond the normal expenses of litigation as a result of Defendants' wrongful conduct.

The Underlying Suit lacked probable cause. The claims in the Underlying Suit were baseless and predicated on perjury and misstatements. Clevinger filed a motion to dismiss. In response to the motion to dismiss, Advocacy Holdings filed an Amended Complaint, which is also presently subject to dismissal. The motions to dismiss, both of which are well taken, are incorporated by reference as if fully set forth herein.

## V.     The FAC Contains Sufficient Facts to Support a Claim for Abuse of Process.

Abuse of process happens when "process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do." *Houlahan v. World Wide Ass'n of Specialty Programs & Sch.*, 677 F. Supp. 2d 195, 199 (D.D.C. 2010) (citing *Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C.1980)). The elements include the following: "(1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be

18

proper in the regular prosecution of the charge." *Houlahan*, 677 F. Supp. 2d at 199 (citing *Hall v. Hollywood Credit Clothing Co.*, 147 A.2d 866, 868 (D.C.1959)).

As discussed, by intentionally committing perjury regarding Plaintiff's address, Defendant Advocacy Holdings was not acting in good faith. By falsely certifying that the notice requirements of Rule 65 were satisfied, despite the absence of notice, Defendant Advocacy Holdings was not acting in good faith. Defendant Advocacy Holdings had an ulterior motive for initiating and pursuing its unlawful and knowingly frivolous claims which were based on the false sworn representation by Koepke that Plaintiff resided in Vienna, Virginia. Defendant Advocacy Holdings' ulterior motives included a desire to unlawfully obstruct Plaintiff's lawful pursuit of his chosen profession. Defendant Advocacy Holdings ulterior motives also included the desire to tarnish Plaintiff's reputation, to ridicule Plaintiff publicly, to intimidate Plaintiff, and to extort Plaintiff into a settlement of Plaintiff's discrimination claims, among other claims. Defendant Advocacy Holdings' ulterior motives also included the malevolent intent to harm Plaintiff on the part of Defendant Koepke. Defendant Koepke is an angry, unstable, and erratic person who is often governed by motives of revenge and harm to others.

As of February 22, 2023, Defendant Advocacy Holdings was aware of Plaintiff's pending claims with the D.C. Office of Human Rights because on February 22, 2023, Plaintiff's counsel informed Defendant Advocacy Holdings' counsel of Plaintiff's pending claim with the D.C. Office of Human Rights. When Defendant Advocacy Holdings became aware that Plaintiff does not live in Virginia, after speaking with the owner of the Vienna, Virginia home, Defendant Advocacy Holdings concealed this fact from the tribunal and instead misled the court. Defendant Advocacy Holdings doubled down and argued for an extension of the ex parte TRO based on improper ulterior motives. On April 17, 2023, Defendant Advocacy Holdings was undisputedly aware that

Plaintiff lives in the District of Columbia and Defendant Advocacy Holdings dispatched its agent to serve Plaintiff at his DC residence pursuant to the underlying suit. On April 17, 2023, Defendant Advocacy Holdings' agent approached Plaintiff's building manager in the District of Columbia and its process falsely represented to Plaintiff's building manager that he is an "FBI agent." To be sure, on April 17, 2023, Defendant Advocacy Holdings' agent unlawfully impersonated a law enforcement officer by showing Plaintiff's building manager a fake FBI badge while falsely stating that Defendant Advocacy Holdings' process server was an "FBI agent." Plaintiff attached to the FAC as Exhibit B a composite of still photographs that depict Defendant Advocacy Holdings' agent's unlawful impersonation of an FBI agent together with his display of a fake FBI badge. ECF No. 29, Ex. B. These wrongful acts are attributable to Defendant Advocacy Holdings and these actions are outrageous and abusive.

Defendant Advocacy Holdings decided to sue Plaintiff in Virginia because Defendant Advocacy Holdings intended to obtain an improper TRO in that court without notice and with a false Rule 65 certification. Defendant Advocacy Holdings knew that Plaintiff's counsel was not admitted in Virginia and Defendant Advocacy Holdings hoped that Plaintiff would not be able to obtain local counsel quick enough to discharge the improper TRO and move to dismiss the case. Thus, Defendant Advocacy Holdings misused and perverted the judicial process to effectuate its nefarious plans, which included fraud on the court. Defendant Advocacy Holdings used a wrongfully obtained ex parte TRO to prevent Plaintiff from engaging in his lawfully chosen profession, causing a special injury to Plaintiff. As a result of the special injury, Plaintiff lost a substantial amount of business and opportunities to develop business. These facts are more than sufficient to state a claim for abuse of process. Accordingly, the motion to dismiss should be denied.

**VI.    The FAC Contains Sufficient Factual Allegations to Support Claims for Fraudulent Inducement, Fraudulent Concealment, and Negligent Misrepresentation.**

    **A.    Fraudulent Inducement.**

To assert a claim for fraudulent inducement, the plaintiff must show the following elements: (1) a false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action taken in reliance upon the representation, (6) which consequently resulted in provable damages." *Keister v. AARP Benefits Comm.*, 410 F. Supp. 3d 244, 259 (D.D.C. 2019), *aff'd*, 839 Fed. Appx. 559 (D.C. Cir. 2021). Here, Plaintiff alleged sufficient facts for each element.

Prior to entering into the noncompete agreement, Defendants represented to Plaintiff that Plaintiff will receive non-dilutable, founders shares in Advocacy Holdings, and will be officially listed as the actual CEO and as a named officer and director of Advocacy Holdings. ECF No. 29 ¶¶ 424-425, 446-447. These representations were false. *Id.* ¶¶ 426, 448. Further, Defendants made these representations with knowledge of their falsity, as Defendants knew they would not provide Plaintiff with non-dilutable founders shares in Advocacy Holdings and knew they would not make Plaintiff an actual officer/director of the company. *Id.* ¶¶ 428, 450. Defendants intended to deceive Plaintiff with the false representations to get Plaintiff to sign the noncompete agreement, and to keep Plaintiff working for Advocacy Holdings and generating sales while Defendants hoarded profits and control of the business. *Id.* ¶¶ 429, 451. Plaintiff acted in reliance of these false representations by signing the noncompete agreement, continuing to work for Advocacy Holdings as the purported CEO, and by contributing $46,000 in Advocacy Holdings, including $11,000 for the Class B shares and additional capital contributions totaling $35,000. *Id.* ¶¶ 430, 452. Plaintiff suffered provable damages in the form of working for multiple years without receiving the distributions, title and control of the company, and more recently, by being restrained from

competing with Advocacy Holdings under the TRO and by being harassed with baseless litigation involving an unenforceable noncompete agreement, among other damages. *Id.* ¶¶ 431, 453. These facts are more than sufficient to state a claim for fraudulent inducement.

Defendants argue, inaccurately, that in the context of a claim of fraud, a misrepresentation of fact cannot be premised on an oral promise of future behavior. ECF 63-1 at p. 21. In support of this argument, Defendants cite *Shear v. Nat'l Rifle Ass'n*, 606 F.2d 1251, n.39 (D.C. Cir. 1979). However, *Nat'l Rifle Ass'n* contradicts Defendants' argument. *Nat'l Rifle Ass'n* provides that an exception to the general rule that a misrepresentation of fact cannot be based on a promise of future behavior exists where at the time the promise was made, the promisor had "an intent not to perform the promised act." *Id.* (citing *Fredonia Broadcasting Corp., Inc. v. RCA Corp.*, 481 F.2d 781, 796 (5th Cir. 1973); *Bissett v. Ply-Gem Industries*, 533 F.2d 142, 145 (5th Cir. 1976); *Freeman v. Continental Gun Co.*, 381 F.2d 459, 468 (5th Cir. 1967); *U. S. v. 1,557.28 Acres of Land in Osage County, Kansas*, 486 F.2d 445, 448 (10th Cir. 1973); *Doody v. John Sexton & Co.*, 411 F.2d 1119, 1121 (1st Cir. 1969); *Rochester Civic Theatre, Inc. v. Ramsay*, 368 F.2d 748, 754 (8th Cir. 1966); *Fruit Industries Research Foundation v. National Cash Register Co.*, 406 F.2d 546, 549-550 (9th Cir. 1969)). Here, Plaintiff alleged that Defendants made their false representations with knowledge of their falsity and with the intention of deceiving Plaintiff into signing the noncompete agreement so that Plaintiff would keep working for Advocacy Holdings. ECF No. 29 ¶¶ 428-429, 450-451. In other words, Defendants never intended to perform. These allegations fall within the exception cited in *Nat'l Rifle Ass'n*. Plaintiff has stated a cause of action for fraudulent inducement, and the motion to dismiss should be denied.

### B.      Fraudulent Concealment.

For fraudulent concealment, the plaintiff must show the following: (1) the defendant had a duty to disclose a material fact to the plaintiff; (2) the defendant failed to disclose the fact; (3) the defendant had an intention to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the concealment. *Alford v. Providence Hosp.*, 945 F. Supp. 2d 98, 110 (D.D.C. 2013), *aff'd*, 561 Fed. Appx. 13 (D.C. Cir. 2014) (citing *Alexander v. Wash. Gas Light Co.*, 481 F.Supp.2d 16, 36–37 (D.D.C.2006)).

Here, Plaintiff alleged each element of fraudulent concealment. Defendants had a duty to disclose to Plaintiff that they never intended to provide Class A shares to Plaintiff and that they regularly siphoned money from the company. ECF No. 29 ¶¶ 466, 479. These are material facts, which Defendants failed to disclose to Plaintiff in order to defraud or deceive Plaintiff. *Id.* Plaintiff acted in justifiable reliance of the concealment by signing the noncompete agreement, continuing to work for Advocacy Holdings as the purported CEO, and by contributing $46,000 to Advocacy Holdings, including $11,000 for the Class B shares and additional capital contributions totaling $35,000. *Id.* ¶¶ 467, 476, 480, 489. Plaintiff suffered provable damages in the form of working for multiple years without receiving not only the distributions but also title and control of the company, and by now being purportedly restrained from competing with Advocacy Holdings under the noncompete agreement. *Id.* ¶¶ 477, 490. These facts suffice for a claim for fraudulent concealment.

Moreover, as discussed, a misrepresentation of fact based on a promise of future behavior is sufficient to state a cause of action for fraud where at the time of making the promise, the promisor had an intent not to perform the promised act. *Nat'l Rifle Ass'n*, 606 F.2d 1251 at n.39. Plaintiff alleged that Defendants made their false representations with knowledge of their falsity

and with the intention of deceiving Plaintiff into signing the noncompete agreement to ensure that Plaintiff would keep working for Advocacy Holdings. ECF No. 29 ¶¶ 474-475, 487-488. In other words, Defendants never intended to perform. These allegations fall within the exception cited in *Nat'l Rifle Ass'n*. Accordingly, Plaintiff has stated a cause of action for fraudulent concealment, and the motion to dismiss should be denied.

### C.    Negligent Misrepresentation.

For a negligent misrepresentation claim, the plaintiff must show the following: (1) the defendant made a false statement or omitted a fact that he had a duty to disclose; (2) that it involved a material issue; and (3) that the plaintiff reasonably relied upon the false statement or omission to his detriment." *Heyer v. Schwartz & Associates PLLC*, 319 F. Supp. 3d 299, 306–07 (D.D.C. 2018) (citing *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1131 (D.C. 2015)).

Here, Plaintiff alleged each element of negligent misrepresentation in the FAC. Defendants represented to Plaintiff that he will receive non-dilutable founders shares in Advocacy Holdings. ECF No. 29 ¶¶ 435, 457. Defendants also represented to Plaintiff that Plaintiff will be officially listed as the actual CEO of Advocacy Holdings and will be named as an officer and director. *Id.* ¶¶ 436, 458. These representations were false. *Id.* ¶¶ 437, 459. Plaintiff never actually received non-dilutable founders shares in Advocacy Holdings and was never named as the official CEO as an officer or director of the company. *Id.* These representations also involved a material issue. *Id.* ¶¶ 438, 460. Plaintiff would not have signed the noncompete agreement without an understanding that Plaintiff would be made an actual officer/director of the company and without an understanding that Plaintiff would be able to receive non-dilutable founders shares in Advocacy Holdings. *Id.* Plaintiff reasonably relied upon the false statements to his detriment. Acting in reasonable reliance on the false statements, Plaintiff signed the noncompete agreement, continued

working for Advocacy Holdings as the purported CEO, and contributed $46,000 to Advocacy Holdings, including $11,000 for the Class B shares and additional capital contributions totaling $35,000. *Id.* ¶¶ 441, 463. As a result, Plaintiff suffered damages in the form of working multiple years without receiving distributions, ownership, and control of the company, by being purportedly restrained from competing with Advocacy Holdings under the noncompete agreement, and by now being harassed with baseless litigation involving an unenforceable noncompete agreement, among other damages. *Id.* ¶¶ 442, 464. These facts more than suffice to state a claim for negligent misrepresentation. Accordingly, the motion to dismiss should be denied.

**D.   The Statute of Limitations is an Affirmative Defense that is Not Proper for a Motion to Dismiss Because the Complaint is Not Conclusively Time Barred on its Face.**

A motion to dismiss may be granted on statute of limitations grounds "only if the complaint on its face is conclusively time barred." *Toggas v. Wachovia Mortgage, FSB*, 2020 WL 3103966, at *6 (D.D.C. June 11, 2020). To prove that conclusive bar, "no reasonable person could disagree on the date on which the cause of action accrued." *Id.* The statute of limitations is an affirmative defense under Fed. R. Civ. P. 8(c)(1). *Jones v. Changsila*, 271 F. Supp. 3d 9, 24 (D.D.C. 2017) The D.C. Circuit has "repeatedly held" that courts "should be hesitant to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint." *Jones*, 271 F. Supp. 3d at 24 (*citing Firestone v. Firestone*, 76 F.3d 1205, 1208–09 (D.C. Cir. 1996)). Application of the statute of limitations depends on questions of fact. *Id.* Therefore, D.C. district courts will only grant motions to dismiss based on the statute of limitations only if factual allegations in the complaint "clearly demonstrate all elements of the statute of limitations defense and the plaintiff has no viable response to the defense." *Id.* (*citing United States ex rel. Landis v. Tailwind Sports Corp.*, 51 F. Supp. 3d 9, 38 (D.D.C. 2014)).

The statute of limitations starts when a plaintiff knows or reasonably should know of "(1) the existence of the alleged injury, (2) its cause in fact, and (3) some evidence of wrongdoing." *Bakeir v. Capital City Mortg. Corp.*, 926 F. Supp. 2d 320, 334 (D.D.C. 2013) (quoting *Drake v. McNair*, 993 A.2d 607, 617 (D.C. 2010)). Unless the plaintiff has actual notice of the cause of action, the statute of limitations begins when a "reasonable investigation" by the plaintiff would have alerted the plaintiff to the cause of action. *McQueen v. Woodstream Corp.*, 244 F.R.D. 26, 32–33 (D.D.C. 2007). To make this determination, the courts employ "a highly factual analysis." *Id.* at 32. Sometimes, "the relevant facts may be such that it may be reasonable to conduct no investigation at all," while in other cases, "the only reasonable investigation under the circumstances would have been an exhaustive one." *Id.* at 33. The court should consider "the conduct and misrepresentations of the defendant, and the reasonableness of the plaintiff's reliance on the defendant's conduct and misrepresentations." *Id.* Ultimately, the *defendant* bears the burden to prove that the plaintiff should have but did not conduct a reasonable inquiry. *Id.* (denying motion to dismiss because defendant failed to meet its burden at this stage and a reasonable person could disagree on the date that the cause of action accrued). Fraud claims are subject to a three-year statute of limitations. *Bakeir v. Capital City Mortg. Corp.*, 926 F. Supp. 2d 320, 334 (D.D.C. 2013) (citing D.C. Code § 12–301)).

Here, Plaintiff could not have had actual notice of the fraud until December 7, 2020, when Plaintiff became aware that Advocacy Holdings was providing him Class B shares, not the Class A shares that Plaintiff was promised. Accordingly, Plaintiff's claims are within the three-year statute of limitations for actual notice. For reasonable notice, Defendant failed to show as a matter of law that Plaintiff should have discovered the fraud earlier. This is a factual determination and not appropriate for a motion to dismiss. Accordingly, the motion should be denied.

26

      **E.**      **Whether Plaintiff Reasonably Relied on the Promise of Equity is a Question of Fact That is Not Proper for a Motion to Dismiss.**

In arguing that Plaintiff did not "plausibly" plead reasonable reliance on Defendants' false representations, Defendants brazenly mischaracterize the allegations of the FAC. *See* ECF No. 63-1 at p. 22. Defendants argue that Plaintiff could not reasonably rely on promises of equity when he signed the noncompete agreement in July 2020 because he was told that he would not be receiving 25% of Class A equity in December 2019. *Id.* This argument is misleading and ignores the fact that Plaintiff signed the noncompete agreement ten days after receiving the Stock Incentive Plan from Defendant Koepke. ECF No. 29 ¶ 85. A reasonable factfinder could infer from these allegations that Plaintiff relied on the representations within the Stock Incentive Plan regarding equity when he signed the noncompete agreement. This is a highly factual determination and not appropriate for a motion to dismiss. Accordingly, the motion should be denied.

**VII.**    **The FAC Contains Sufficient Allegations for Claims for Breach of Contract and Those Claims are Not Barred by the Statute of Limitations.**

A claim for breach of contract has the following elements: (1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by breach. *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009). The statute of limitations for breach of contract is three years, and it begins to run at the time of the breach. *Sea Search Armada v. Republic of Colombia*, 821 F. Supp. 2d 268, 272 (D.D.C. 2011), *aff'd*, 522 Fed. Appx. 1 (D.C. Cir. 2013) (citing D.C. Code § 12–301(7)).

The FAC contains sufficient facts for all elements of breach of contract. A valid contract exists between the parties. ECF No. 29 ¶ 492, 499. Koepke and Plaintiff entered into a contractual agreement whereby Koepke promised to effectuate the issuance of founders shares of Advocacy Holdings to Plaintiff and promised to make Plaintiff an officer and director in exchange for

Plaintiff continuing to work for "OCP" as CEO. *Id.* ¶ 493. Acting on behalf of "OCP", Advocacy Holdings, then known as Red Chalk, made the same promises. *Id.* ¶ 500. Plaintiff accepted the offer and continued to work as the purported CEO, first with Red Chalk Group and then with Advocacy Holdings. *Id.* ¶¶ 494, 501. Pursuant to the contract, Defendants were obligated to effectuate the issuance of founders shares to Plaintiff and to make Plaintiff an officer and director of Advocacy Holdings. *Id.* ¶¶ 495, 502. Defendants breached the contract by failing to effectuate the issuance of founders shares to Plaintiff and by failing to make Plaintiff an officer and director of Advocacy Holdings. *Id.* ¶¶ 496, 502. As a result of this breach, Plaintiff suffered damages as, among other things, Plaintiff was not paid the distributions to which he was entitled, he was forced to contribute $46,000 of his own money, with $11,000 for the Class B shares and the additional capital contributions totaling $35,000, Plaintiff was unable to vote or control the company, and Plaintiff did not receive the compensation as an officer and director of the company that he should have been paid. *Id.* ¶¶ 497, 503. These allegations easily suffice for breach of contract.

Moreover, as discussed *supra*, the statute of limitations is an affirmative defense. The breach of contract claims are not barred on the face of the FAC. The time of breach would have been December 7, 2020, when Plaintiff did not receive his unrestricted shares. To the extent Defendants argue otherwise, they are free to assert that affirmative defense so that it can be resolved by the factfinder. However, the statute of limitations provides no basis for dismissal. Accordingly, the motion to dismiss should be denied.

## VIII.   The FAC Contains Sufficient Factual Allegations for Claims for Unjust Enrichment, Which was Properly Pled in the Alternative.

The elements of a claim for unjust enrichment are the following: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retained the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust. *UMC Dev., LLC v. Dist. of Columbia*, 120 A.3d

37, 48 (D.C. 2015). Moreover, nothing "precludes a plaintiff from pleading an unjust enrichment claim as an alternative to a breach of contract claim even when seeking the same amount." *Glasgow v. Camanne Mgmt. Inc.*, 261 A.3d 208, 217 (D.C. 2021).

Here, sufficient facts exist for all elements. Plaintiff conferred several benefits on Defendants. Plaintiff worked for Advocacy Holdings as its purported CEO, leading the enterprise as it generated more than $10 million in revenue. ECF No. 29 ¶¶ 507, 512, 517, 523. Plaintiff also contributed $46,000 to Advocacy Holdings. *Id.* Defendants retained these benefits. *Id.* Further, Defendants retention of these benefits is unjust. Plaintiff was not justly compensated, as he did not receive Class A stock ownership in Advocacy Holdings as promised and was forced to contribute $46,000 to a defunct enterprise. *Id.* ¶¶ 508, 513, 518, 524. Plaintiff was rendered impoverished while Defendants engaged in self-dealing. *Id.* Such self-dealing includes, but is not limited to, the wrongful payment of at least $94,000 to Red Chalk for services that Red Chalk never performed. *Id.* The facts alleged are more than sufficient to state a claim for unjust enrichment.

Moreover, as Defendants dispute the existence of any binding contract, the unjust enrichment claim is properly pled in the alternative to the breach of contract claims. *Id.* ¶¶ 510, 515, 520, 525. The contracts described in Defendants' motion do not cover the issues in dispute under the unjust enrichment counts. ECF 63-1 at p. 24. Thus, Defendants' argument that the contracts displace Plaintiff's unjust enrichment claims does not apply here. *In re APA Assessment Fee Litig.*, 766 F.3d 39, 46 (D.C. Cir. 2014). Accordingly, the motion to dismiss should be denied.

## IX.    The FAC Contains Sufficient Factual Allegations for a Declaratory Judgment to Determine Plaintiff's Ownership Interest in Advocacy Holdings.

There is an actual substantial controversy regarding Plaintiff's ownership interest in Advocacy Holdings. This controversy involves Plaintiff and Defendants and warrants the immediate issuance of a declaratory judgment. In addition to his $11,000 payment for the

worthless Class B stocks, Defendants forced Plaintiff to contribute a total of $35,000 to Advocacy Holdings as equity and debt contributions. The capital calls were not undertaken pursuant to Class B shares, as the Stock Incentive Plan does not provide for capital calls and capital contributions for Class B common stockholders. These contributions were not met with the issuance of simultaneous additional shares of Class B stock to Plaintiff. Instead, they were treated as Plaintiff's share as an owner of standard, Class A stock. However, Plaintiff was not provided actual shares. The following chart summarizes Plaintiff's capital contribution for Class B Shares.

| Date of Plaintiff's Contribution Check | Amount | Date that Advocacy Deposited the Check |
|---|---|---|
| 12/11/2020 | $11,000 | 12/28/2020 |

The following chart summarizes Plaintiff's capital contribution that should have been for Class A Shares.

| Date of Plaintiff's Contribution Check | Amount | Date that Advocacy Deposited the Check |
|---|---|---|
| 2/21/2022 | $5,000 | **5/27/2022** |
| 8/17/2022 | $10,000 | 8/17/2022 |
| 8/31/2022 | $10,000 | 9/26/2022 |
| 11/7/2022 | $5,000 | 11/8/2022 |
| 11/15/2022 | $5,000 | 11/21/2022 |
| **Total Class A Investment** | **$35,000** | |

Plaintiff invested a total of $46,000, consisting of $11,000 in Class B shares and $35,000 in what should rightfully be classified as Class A shares. The FAC contains sufficient allegations for a declaratory judgment on Plaintiff's ownership share. Accordingly, the Court should deny the motion to dismiss and instead consider the merits of this dispute.

**X.    The FAC Contains Sufficient Factual Allegations for Claims for Wage Theft in Violation of DC Stat. 32-1303, Failure to Pay Accrued Sick Leave and Accrued Vacation Pay, and Wage Theft for Improper Record Keeping.**

All three statutory employment claims are supported by sufficient ultimate facts. Accordingly, the motion to dismiss should be denied.

**A.    Wage Theft in Violation of DC Stat. 32-1303.**

Under D.C. Code Ann. § 32-1303(1), when an employer discharges an employee, the employer "shall pay the employee's wages earned not later than the working day following such discharge; provided, however, that in the instance of an employee who is responsible for monies belonging to the employer, the employer shall be allowed a period of 4 days from the date of discharge or resignation for the determination of the accuracy of the employee's accounts, at the end of which time all wages earned by the employee shall be paid." *Id.* Under D.C. Code Ann. § 32-1303(2), when an employee quits or resigns, "the employer shall pay the employee's wages due upon the next regular payday or within 7 days from the date of quitting or resigning, whichever is earlier." *Id.*

Moreover, under D.C. Code Ann. § 32-1303(4), when an employer fails to pay an employee wages earned as required under paragraphs (1), (2), and (3) stated above, the employer must "pay, or be additionally liable to, the employee, as liquidated damages, 10 per centum of the unpaid wages for each working day during which such failure shall continue after the day upon which payment is hereunder required, or an amount equal to treble the unpaid wages, whichever is smaller." *Id.* The term "wages" means "all monetary compensation after lawful deductions, owed by an employer, whether the amount owed is determined on a time, task, piece, commission, or other basis of calculation" and includes without limitation (A) bonuses, (B) commissions, (C) fringe benefits paid in cash, (D) overtime premium, and (E) other remuneration promised or owed.

D.C. Code Ann. § 32-1301(3).

Here, Plaintiff was constructively terminated from his employment with Defendant Advocacy Holdings on or about February 1, 2023. ECF No. 29 ¶ 535. The effective date of Plaintiff's termination was February 1, 2023. *Id.* Defendant Advocacy Holdings, however, willfully failed to pay Plaintiff all wages owed to him not later than the working day following the discharge, in violation of D.C. Code § 32-1303. *Id.* Specifically, Defendant Advocacy Holdings was approximately ten days late in tendering Plaintiff's final paycheck. *Id.* ¶ 536. The check was fraudulently backdated for January 31, 2023. *Id.* No payment was made for February 1, 2023. *Id.* The check was not mailed until early/mid February 2023 and was not deposited until mid-February 2023. *Id.* The paycheck should have been made by direct deposit. *Id.* No payment was ever made for February 2023. *Id.*

Further, Plaintiff was not reimbursed for $18,000 in unpaid business expenses that Plaintiff submitted for reimbursement. *Id.* ¶ 537. Plaintiff also was not paid earned commissions in the amount of $8,000. *Id.* ¶ 538. From the facts alleged, Defendant paid Plaintiff late, if at all, in violation of the statute. Moreover, the definition of wages is broad enough to cover commissions and unreimbursed expenses which constitute "other renumeration promised or owed." Defendant cited no case law requiring specific detailed allegations of the unreimbursed expenses. And the statute does not require such detail. Ultimate facts are sufficiently pled. Defendant is on notice and can prepare a defense. Accordingly, the motion to dismiss should be denied.

**B.      Failure to Pay Accrued Sick Leave and Accrued Vacation Pay.**

As a "general rule," an employee who accrues but does not take vacation or other paid leave is entitled to monetary compensation for that leave upon discharge from employment, absent

an agreement to the contrary. *Nat'l Rifle Ass'n v. Ailes*, 428 A.2d 816, 820–21 (D.C. 1981).[1] The employee "may establish a right to monetary compensation for accrued but unused leave by pleading and proving that (1) prior to performance of the work, there was an agreement entitling the employee to accumulate leave, and (2) as of the termination date he or she had accumulated the claimed number of days." *Nat'l Rifle Ass'n*, 428 A.2d at 820. Any "qualification on that right" such as "an agreement between the parties limiting (or defeating) the employee's right to compensation for that leave" is "in the nature of an affirmative defense that must be pleaded and proved by the defendant-employer." *Id.* (holding "the rule of this jurisdiction is: (1) the right to accrue paid leave implies the right to compensation for unused leave upon discharge from employment, and (2) once a discharged employee has established the right to accrue leave and the amount of leave unused, the employee is entitled to compensation for it unless the employer sustains the burden of proving 'an agreement to the contrary'"). Moreover, under D.C. Code Ann. § 32-531.02, an employer with "at least 25, but not more than 99, employees shall provide for each employee not less than one hour of paid leave for every 43 hours worked, not to exceed 5 days per calendar year." *Id.*

Here, Plaintiff alleged that Defendant Advocacy Holdings was required under D.C. Code Ann. § 32-531.02 to provide at least one hour of paid leave for every 43 hours worked, not to exceed 5 days per calendar year, and that Defendant failed to provide any paid leave to Plaintiff for 77.33 vacation hours, which amounts to approximately $7,500. ECF No. 29 ¶¶ 545, 546. These facts suffice. Defendants' assertion that Advocacy Holdings has less than 25 employees is outside

---

[1] citing *Smith v. Kingsport Press, Inc.*, 366 F.2d 416, 419 (6th Cir. 1966); *In re Wil-low Cafeterias, Inc.*, 111 F.2d 429, 432 (2d Cir. 1940); *Harbridge v. Greyhound Lines, Inc.*, 294 F. Supp. 1059, 1065 (E.D. Pa. 1969); *Berteau v. Wiener Corp.*, 362 So.2d 806, 808 (La. App. 1978); *Textile Workers Union v. Paris Fabric Mills, Inc.*, 92 A.2d 40, 42 (1952); *Pfeifer v. A.F. Lowes Lumber Co.*, 291 P.2d 744, 748 (1955); *Valeo v. J. I. Case Co.*, 18 Wis.2d 578, 585-86 (1963).

the four corners of the Complaint. Moreover, any purported qualification on Plaintiff's right to the paid leave is an affirmative defense that is inappropriate for a motion to dismiss. Accordingly, the motion to dismiss should be denied.

### C.    Wage Theft for Improper Record Keeping.

Under D.C. Code Ann. § 32-531.10b(a), employers must "retain records documenting hours worked by employees and paid leave taken by employees for a period of 3 years or the prevailing federal standard at the time the record is created." *Id.* Under D.C. Code Ann. § 32-531.10b(b), "when an issue arises as to an employee's entitlement to paid leave under this subchapter, if the employer does not maintain or retain adequate records documenting hours worked by the employee and paid leave taken by the employee . . . there shall be a rebuttable presumption that the employer has violated this subchapter." *Id.*; *see also Harbour v. Univ. Club of Washington*, 610 F. Supp. 3d 123 (D.D.C. 2022) (permitting employee's claim for improper record keeping under D.C. Code Ann. § 32-531.10b beyond motion to dismiss stage because the statute allowed private action based on the record-keeping provision alone).

Here, Defendant Advocacy Holdings failed to retain records documenting the hours worked by employees, and paid leave taken by employees, for a period of 3 years or the prevailing federal standard at the time the record was created. ECF No. 29 ¶ 549. Moreover, Defendant Advocacy Holdings failed to provide any paid leave to Plaintiff and similarly situated employees. *Id.* ¶ 550. Under D.C. Code § 32-531.02, Defendant Advocacy Holdings was required to "provide for each employee not less than one hour of paid leave for every 43 hours worked, not to exceed 5 days per calendar year." *Id.* ¶ 551. Under D.C. Code § 32-531.10b, Plaintiff is entitled to a rebuttable presumption that Defendant Advocacy Holdings has violated D.C. Code § 32-531.02. *Id.* ¶ 552. A cause of action exists for failure to keep proper records and Plaintiff sufficiently pled

factual allegations in support. Accordingly, the motion to dismiss should be denied.

**XI.    The FAC Contains Sufficient Factual Allegations for Claims for Breach of Fiduciary Duty.**

The elements of a claim for breach of fiduciary duty are the following: (1) the existence of a fiduciary relationship with the defendant; (2) breach of a duty imposed by that fiduciary relationship; and (3) an injury caused by such breach. *Caesar v. Westchester Corp.*, 280 A.3d 176, 186 (D.C. 2022). Here, each element has been properly pled.

Plaintiff alleged that there was a fiduciary relationship between Defendant Koepke and Plaintiff. ECF No. 29 ¶¶ 554. Plaintiff further alleged that Defendant Koepke breached the fiduciary duties of care, loyalty, good faith, and independence that he owed to Plaintiff. *Id.* Defendant Koepke alleged to Plaintiff that Advocacy Holdings was insolvent, yet Koepke used corporate assets for his own benefit while concealing corporate records from Plaintiff, a purported officer of the company. *Id.* ¶¶ 555-560. Defendant Koepke also breached his fiduciary duties to Plaintiff by grossly mismanaging the affairs of the company. *Id.* ¶ 565. Further, Defendant Koepke breached his fiduciary duty of loyalty by obtaining two Paycheck Protection Program payments, worth $376,000 each, and pocketing them, rather than using them for their intended purpose, which was to allocate them toward the business. *See Id.* ¶¶ 79, 109, 559. Defendant Koepke did this while alleging that the corporation was insolvent. *Id*. ¶ 557. Plaintiff alleged specific injuries that arise directly from these breaches. As a result of the specific breaches, Plaintiff will suffer irreparable injury in that he will not receive his fair portion of Advocacy Holdings' distribution assets and will be prevented from benefiting from his equity in the company. *Id.* ¶ 561.

It is not true, as Defendants assert, that Defendant Koepke owed no fiduciary duties to Plaintiff. Plaintiff was a shareholder and made capital contributions to the corporation. *Id.* ¶ 189. As a shareholder of Advocacy Holdings, Plaintiff was owed fiduciary duties from Defendant

Koepke. *Silberberg v. Becker*, 191 A.3d 324, 337 (D.C. 2018) (stating that majority shareholders owe minority shareholders a fiduciary duty to not use voting power for purposes adverse to interests of shareholders). Moreover, Plaintiff does not need to bring his claims of breach of fiduciary duty as a derivative action on behalf of Advocacy Holdings. A shareholder derivative action grants individual shareholders means to protect the interests of the corporation from the misfeasance and malfeasance of its directors and officers. *Behradrezaee v. Dashtara*, 910 A.2d 349, 354 (D.C. 2006) (citing *Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 95, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991)). Here, however, Plaintiff seeks to protect his own interests as a shareholder of the company, rather than the interests of the company. Thus, Plaintiff's claims for breach of fiduciary duty are properly pled as direct, rather than as derivative, actions. These allegations, taken as true, suffice for claims of breach of fiduciary duty. Accordingly, the motion to dismiss should be denied.

## XII.   The FAC Contains Sufficient Factual Allegations for an Equitable Accounting Claim.

An accounting arises from a fiduciary relationship between parties. *Bates v. Nw. Human Servs., Inc.*, 466 F. Supp. 2d 69, 103 (D.D.C. 2006). Here, Plaintiff was a shareholder who made capital contributions to the corporation. ECF No. 29 ¶¶ 189, 574. As a shareholder of Advocacy Holdings, Plaintiff was owed fiduciary duties from Defendants. *Silberberg*, 191 A.3d at 337. Accordingly, Plaintiff is entitled to an accounting.

Further, Plaintiff's request for an accounting is appropriate because the malfeasance and self-dealing of Defendants have rendered the accounts between the parties complex. Defendants received payments from the Paycheck Protection Program totaling $752,000. ECF No. 29 ¶¶ 79, 109. These payments were obtained to protect the company against the economic downturn from the pandemic. Despite receiving $752,000 in PPP money, Defendant Koepke continued to assert

that the company was insolvent. *Id*. ¶ 575. Defendant Koepke concealed company records and kept the true books and records of both Advocacy Holdings and Red Chalk Group concealed and hidden from Plaintiff. *Id.* This caused great complication. *Id.* Defendants asked Plaintiff to make a capital contribution to the business of $46,000. *Id.* ¶ 580. In light of the company's purported insolvency, Plaintiff does not know how his capital contributions or the $752,000 in PPP money was used. Defendants Koepke and Zenich have personally profited from their misappropriation of company assets and self-dealing transactions. *Id.* ¶ 581. These allegations, taken as true, suffice for a claim for equitable accounting. Accordingly, the motion to dismiss should be denied.

## XIII.   The FAC Contains Sufficient Factual Allegations for an Unpaid Equity Distribution Claim.

Under Delaware law, which governs the Delaware corporation Advocacy Holdings, the court can compel dividend distributions when the corporation's board of directors engages in fraud or gross abuse of discretion. *Gabelli & Co., Inc. v. Liggett Group Inc.*, 479 A.2d 276, 280 (Del. 1984) (citing *Moskowitz v. Bantrell, Del.Supr.*, 190 A.2d 749 (1963)). A corporate board does not have "untrammeled power to declare or not declare a dividend." *Smith v. SPNV Holdings, Inc.*, 1987 WL 14676, at *4 (Del. Ch. Oct. 28, 1987). Instead, courts can compel the declaration of a dividend when "the withholding of it is explicable only on the theory of an oppressive or fraudulent abuse of discretion." *Gabelli & Co., Inc.*, 479 A.2d at 280 (citing *Eshleman v. Keenan*, 194 A. 40, 43 (1937); *Baron v. Allied Artists Pictures Corp.*, 337 A.2d 653, 659 (1975)).

Here, Plaintiff has right to proportionate distributions. ECF No. 29 ¶ 589. Plaintiff has not received his distributions due to Defendant Koepke's and Defendant Zenich's fraud and gross abuse of discretion. *Id.* ¶ 590. Beginning in 2020, and coinciding with the parties' enhanced strife about equity, Koepke began repeatedly asserting to Plaintiff that the company's margins were problematic despite Plaintiff's successful continuing year-on-year overall revenue growth. Koepke

and Zenkich refused to disclose to Plaintiff the amount, frequency, and manner in which distributions were siphoned from Advocacy Holdings. *Id.* ¶ 585. The critical distribution information remained concealed and Koepke failed to disclose to Plaintiff the accounting and financial arrangements between Advocacy Holdings and Red Chalk Group. *Id.* Koepke even forced Plaintiff to make numerous capital contributions, of $46,000, amid Koepke's assertions about Advocacy Holdings' profitability. *Id.* ¶ 586. The financial problems and servicing issues caused by Koepke's unauthorized distributions likely account for Advocacy Holdings' drop in customers. *Id.* ¶ 587. Koepke consistently obfuscated and distorted the company's financial position and made unauthorized distributions, the scale of which are unknown because Koepke kept the books secret. *Id.* ¶ 588. These allegations, taken as true, suffice for a claim for unpaid distributions. Accordingly, the motion to dismiss should be denied.

**XIV.  The FAC Contains Sufficient Factual Allegations for Claims for Breach of the Implied Covenant of Good Faith and Fair Dealing.**

Every contract has an implied covenant of good faith and fair dealing. *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1133 (D.C. 2015) (citing *Wright v. Howard Univ.*, 60 A.3d 749, 754 (D.C. 2013)). The covenant prevents any party from doing "anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Sundberg*, 109 A.3d at 1133 (citing *Abdelrhman v. Ackerman*, 76 A.3d 883, 891 (D.C. 2013)). To state a claim for breach of the implied covenant of good faith and fair dealing, the plaintiff must allege either "bad faith or conduct that is arbitrary and capricious." *Id.* (citing *Abdelrhman* 76 A.3d at 891–92). When a party "evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party, he or she may be liable for breach of the implied covenant of good faith and fair dealing." *Sundberg*, 109 A.3d at 1133 (citing *Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000); RESTATEMENT (SECOND) OF CONTRACTS, § 205 (stating

"[s]ubterfuges and evasions violate the obligation of good faith in performance . . . [b]ut the obligation goes further: bad faith may be overt or consist of inaction, and fair dealing may require more than honesty")).

Here, Defendants Koepke and Advocacy breached the implied duty of good faith and fair dealing by evading the spirit of their contractual agreement with Plaintiff to include Plaintiff as an officer and director of Advocacy Holdings and to confer upon Plaintiff Class A founders shares in Advocacy Holdings. *Id.* ¶¶ 593, 598. Defendants Koepke and Advocacy willfully rendered imperfect performance by not abiding by their promise to make Plaintiff an officer of record and by conferring to Plaintiff worthless Class B non-voting shares instead of Class A founders shares as agreed. *Id.* ¶¶ 594, 599. As a result of the breach of the implied duty of good faith and fair dealing, Plaintiff suffered damages. *Id.* ¶¶ 595, 600.

For the same reasons set forth above regarding the breach of contract claims, the breach of the implied covenant claims are not barred by the statute of limitations. And an actual contract exists between the parties. Moreover, the claims are not identical to the breach of contract claims, as the good faith and fair dealing claims are for Defendants willfully rendering imperfect performance in bad faith, as opposed to just breaching. Moreover, these claims are not based on a breach of the equity contract for B shares, but on a breach of the contract to *effectuate the issuance* of founders shares of Advocacy Holdings to Plaintiff and to make Plaintiff an officer and director of Advocacy Holding in exchange for Plaintiff continuing to work for "OCP" as CEO. *See, e.g.*, ECF No. 29 ¶¶ 493, 500. Defendants' arguments are more properly raised in a motion for summary judgment. The FAC contains sufficient facts to state a claim. Accordingly, the motion to dismiss should be denied.

## CONCLUSION

Defendants' motion to dismiss should be denied in its entirety.

Respectfully submitted,

CHASE LAW & ASSOCIATES, P.A.

By:     */s/ Kenneth E. Chase*
        Kenneth E. Chase
        D.C. Bar No. 985629
        Chase Law & Associates, P.A.
        1141 71st Street
        Miami Beach, FL 33141
        Tel: (305) 402-9800
        Fax: (305) 402-2725
        Email: kchase@chaselaw.com

        *Attorneys for Plaintiff Chazz Clevinger*

## CERTIFICATE OF SERVICE

I, Kenneth E. Chase, hereby certify that I served the foregoing via CM/ECF, which serves notice to all counsel of record, on September 19, 2023.

By:     */s/ Kenneth E. Chase*
        Kenneth E. Chase