**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CHAZZ CLEVINGER,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ADVOCACY HOLDINGS, INC., *et al.*,**<br><br>**Defendants.** | |
| **ADVOCACY HOLDINGS, INC.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CHAZZ CLEVINGER, *et al.*,**<br><br>**Defendants.** | **Case No. 23-cv-1159 (JMC/GMH)** |

**ORDER**

Although discovery closed two months ago, the Advocacy Holdings Parties have raised yet another dispute, this one related to the undersigned's Order of January 20, 2026. As relevant here, that Order required the Clevinger Parties to produce to the Advocacy Holdings Parties (1) "all Form 7004s"—which are IRS forms through which a business entity may request an extension of time to file income taxes—"filed on behalf of CiviClick for tax years 2023 and 2024 and all Form 7004s filed on behalf of SCS for tax years 2021, 2022, 2023, and 2024";[1] and (2) all contemporaneous notes taken by Chazz Clevinger memorializing the content of calls or meeting

[1] The undersigned denied the Advocacy Holdings Parties' request for extension applications related to Chazz Clevinger's individual income taxes because it was "an entirely new request" that came after the close of discovery and was not fairly encompassed within the Advocacy Holdings Parties' RFPs. ECF No. 138 at 4.

he had with John Koepke and/or Raymond Zenkich that are responsive to two Requests for Production ("RFPs") served on Chazz Clevinger. ECF No. 138 at 12. The Advocacy Holdings Parties assert that the Clevinger Parties have violated that Order and seek relief comprising leave to subpoena the Clevinger Parties' tax preparers; an order again requiring the Clevinger Parties to produce the contemporaneous notes, as well as any recordings of the calls or meetings; and leave to file a motion for sanctions against the Clevinger Parties. *See* ECF No. 139 at 1–2. The Advocacy Holdings Parties' requests will be granted in part and denied in part.

**A. Form 7004s**

The Clevinger Parties produced no Form 7004s in response to the January 20, 2026, Order. Instead, they provided the Advocacy Holdings Parties with a declaration from Clevinger asserting under penalty of perjury that no Form 7004s exist and explaining both that "references in [his] deposition to extensions having been requested" were in the "context" of his "understanding . . . that CiviClick and SCS would receive 'pass-through' or 's-corp' treatment and that a separate tax return may not be necessary for those entities" and that his "tax classification is subject to Act 60 relative to residence in Puerto Rico."[2] ECF No. 141-1 at 2. Clevinger also produced transcripts from the preparer of his individual taxes "showing extension requests . . . for tax years 2021, 2022, and 2023" and asserted that an extension request for 2024 "is in process." *Id.*; *see also id.* at 3–6 (IRS account transcripts for 2021, 2022, and 2023 tax years). The Advocacy Holdings Parties assert the declaration is inconsistent with Clevinger's deposition testimony that extension applications were filed for SCS and CiviClick.

[2] "Act 60" apparently refers to the Puerto Rico Incentives Code, Act 60-2019, which seeks to "encourage foreigners, whether mainland Americans or international investors, to move to and become residents of Puerto Rico in exchange for generous tax treatment." David A. González La Luz, *Puerto Rico's Act 60: The Key to Economic Prosperity or A Tool for Colonialism?*, 94 Rev. Jur. U.P.R. 863, 864 (2025).

A close look at Clevinger's deposition testimony establishes that, although the questioning elicited some ambiguous answers, Clevinger testified that no such extension applications were filed on behalf of CiviClick or SCS. Specifically, when asked whether he filed any federal "tax returns or extensions for CiviClick" in 2023 or 2024—the two years for which that entity was ordered to produce Form 7004s—he answered, "No," and asserted that he understood from his tax advisor that no such filings were necessary because of his status as a citizen of Puerto Rico. ECF No. 136 at 17–18. When asked a similar question about tax documents for SCS for tax years 2021 through 2024, Clevinger replied that "[t]he same answer [he] previously gave for CiviClick is true for SCS" and that extensions "were filed and/or not filed on the basis of [his] status as a Puerto Rican citizen." ECF No. 136 at 17–18, 20. He further acknowledged that he had filed for extensions on his *individual* tax returns for tax years 2021 through 2024. *See id.* at 14. That testimony is consistent with Clevinger's recent declaration in which he asserted no Form 7004s were filed for CiviClick and SCS. ECF No. 141-1 at 2.

To be sure, later in the deposition, things get a bit muddled, with counsel for the Advocacy Holdings Parties asking whether Clevinger was testifying "that for 2021, 2022, 2023, and 2024, SCS filed extensions for tax returns" and Clevinger replying, "Yeah . . . , for whether you're talking about me individually, CiviClick, or SCS, extensions have been filed for all those relevant time periods, to my knowledge." ECF No. 136 at 21. But that testimony is still not inconsistent with Clevinger's declaration, which indicates that he believes separate tax returns are not required for the business entities because they "would receive 'pass-through' or 's-corp' treatment." ECF No. 141-1 at 2. That suggests that Clevinger believes the extensions he filed in connection with his individual tax returns also applied to the business entities' income taxes.[3]

[3] The undersigned expresses no opinion on whether Clevinger's interpretation of tax law is correct.

Accordingly, because Clevinger has attested that the documents Advocacy Holdings seeks do not exist, the Advocacy Holdings Parties' request for leave to subpoena those same documents from the Clevinger Parties' tax preparers is denied.

**B. Notes and/or Recordings of Phone Calls and Meetings**

RFP Nos. 31 and 32 served on Clevinger seek, respectively, documents referencing any promise to confer any equity in Advocacy Holdings on Clevinger and documents referencing any promise to make Clevinger an officer or director of Advocacy Holdings. *See* ECF No. 136 at 79. In their January 5, 2025, discovery letter, the Advocacy Holdings Parties cited 38 paragraphs in Clevinger's amended complaint that allegedly include direct quotations from calls or meetings among Clevinger and Koepke and/or Zenkich. *See* ECF No. 136 at 2–3. Noting that Clevinger testified at his deposition that the quotations in the amended complaint came either from contemporaneous notes or memoranda he made memorializing those calls or meetings or from his "actual physical memory"—but that "the vast majority" came from his written notes—the undersigned ordered Clevinger to produce "all notes reflecting the substance of any call or meeting referenced in the amended complaint that are responsive to RFP Nos. 31 and/or 32 served on Clevinger." ECF No. 138 at 9 (quoting ECF No. 136 at 29), 12. In response, Clevinger produced two emails from Clevinger to himself, both dated October 12, 2022, purporting to be memoranda of a Zoom call among Clevinger, Koepke, and Zenkich on the evening of October 11, 2022, "to discuss the financial status of the Advocacy Holdings business." ECF No. 141-1 at 7. The Advocacy Holdings Parties complain that neither email is responsive to RFP Nos. 31 or 32 and neither has metadata. ECF No. 139 at 2. They ask the Court to again order the Clevinger Parties to produce all notes reflecting any call or meeting referenced in the amended complaint that are responsive to the two RFPs and further request—as they did in their January 5, 2026, discovery

letter, *see* ECF No. 136 at 3—an order requiring the Clevinger Parties to produce any recordings of such meetings or calls. *See* ECF No. 139 at 2. The Clevinger Parties respond that "RFP Nos. 31 and 32 are narrowly tailored" to seek documents referencing only promises to confer equity in Advocacy Holdings on Clevinger or appoint him as an officer or director of the company and assert that, other than the two "contemporaneous memoranda" produced, "[n]o other responsive documents exist." ECF No. 140 at 2.

Perhaps there is some confusion over this request and the undersigned's prior order. The Clevinger Parties' response to date indicates as much: although emphasizing the narrowness of the RFPs at issue, they produced documents that are not responsive to those RFPs. *See* ECF No. 141 at 7–8. Neither includes anything about a promise to confer equity in Advocacy Holdings or appoint Clevinger an officer or director of that firm; rather, both discuss Advocacy Holdings' financial troubles. *See id.* For its part, the Advocacy Holdings Parties pointed to dozens of paragraphs from Clevinger's amended complaint allegedly including statements made in calls or meetings, many of which also do not address any such promises. *See* ECF No. 136 at 2–3. A review of those paragraphs establishes that (1) some of them include purported direct quotations not from calls or meetings, but from emails exchanged between or among Clevinger and Koepke and/or Zenkich (about which there would be no need to take notes), *see* ECF No. 29, ¶¶ 82, 92, 94–95, 160–162; and (2) most them do not include material responsive to RFP Nos. 31 or 32. Indeed, of the 38 paragraphs identified, only 11 include quotations from calls or meetings (and therefore potentially from Clevinger's notes) that are responsive to the two RFPs: paragraphs 60–62, 64, 68, 70, 73–74, and 101–103.

Accordingly, the undersigned offers a clarification. The Clevinger Parties shall produce to the Advocacy Holdings Parties all notes reflecting the substance of the calls or meetings referenced

in paragraphs 60–62, 64, 68, 70, 73–74, and 101–103 of Clevinger's amended complaint. *See* ECF No. 29, ¶¶ 60–62, 64, 68, 70, 73–74, 101–103. To the extent those notes are in electronic form, they shall be produced with metadata. Because the RFPs served on Clevinger define "document" to include writings and sound recordings, among other things, *see* ECF No. 136 at 73, the Clevinger Parties shall also produce any recordings in their possession, custody, or control of the calls or meetings referenced in those paragraphs.

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** the Advocacy Holdings Parties' request for leave to subpoena the Clevinger Parties' tax preparers is **DENIED**. It is further

**ORDERED** that, on or before February 20, 2026, the Clevinger Parties shall produce to the Advocacy Holdings Parties all notes and audio recordings in their possession, custody, or control reflecting the substance of the calls or meetings referenced in paragraphs 60–62, 64, 68, 70, 73–74, and 101–103 of Clevinger's amended complaint. *See* ECF No. 29, ¶¶ 60–62, 64, 68, 70, 73–74, 101–103. To the extent those notes are in electronic form, they shall be produced with metadata. It is further

**ORDERED** that the Advocacy Holdings Parties' request for leave to file a motion for sanctions under Rule 37 of the Federal Rules of Civil Procedure is **DENIED** as the undersigned sees no basis for sanctions at this time.

**SO ORDERED.**

G. Michael Harvey

Date: February 13, 2026

___________________________
G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE