# NON-COMPETITION, NON-SOLICITATION AND NON-DISCLOSURE AGREEMENT

This Non-Competition, Non-Solicitation and Non-Disclosure Agreement ("Agreement") is made and entered into by and between Advocacy Holdings, Inc. (the "Company") and Chazz D. Clevinger ("Employee") as of July 1, 2020 (the "Effective Date"). (The Company and Employee are collectively referred to herein as the "Parties" and each, at times, a "Party").

## RECITALS

**WHEREAS**, the Company and Employee plan to enter into an at-will employment (the "Relationship") and the Company requires Employee to enter into this Agreement as a condition of entering into and continuing such Relationship;

**WHEREAS**, in connection with the Relationship, Employee will become privy to, and may also assist in the development or maintenance of, the Company's confidential information, trade secrets and/or intellectual property;

**WHEREAS**, in connection with the Relationship, Employee will have direct contact and dealings with the Company's customers, suppliers, vendors and prospective customers with whom the Company has cultivated and maintained business relationships and goodwill; and

**WHEREAS**, the Company's confidential information, trade secrets, intellectual property and relationships with customers, suppliers, vendors and prospective customers provide a competitive advantage and, but for employment with the Company, Employee would not have access to these or other legitimate business interests of the Company.

## TERMS

**NOW, THEREFORE**, in order to protect the Company's legitimate business interests and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. Definitions. As used herein, the following terms have the meanings set forth below:

(a) "Competing Business" or "Competitive Business Activity" means any business that competes with or business activity that is competitive with digital advocacy, advocate acquisition services, grassroots advocacy, stakeholder management, stakeholder engagement, government relations advocacy, legislative tracking, regulatory tracking, and advocacy strategy conducted by the Company across the United States.

(b) "Company Confidential Information" means trade secrets (as defined by applicable law) and other non-public information, whether in hard-copy, stored electronically or communicated verbally, that is confidential and proprietary, that relates to the business conducted by the Company, that Employee becomes privy to by virtue of the Relationship, and that the Company designates or treats as confidential through its policies, procedures and/or practices. Subject to the foregoing, Company Confidential Information includes: (i) business and marketing plans, practices and strategies; (ii) internal methods of operation, techniques, systems and processes; (iii) collected or compiled customer, supplier and vendor information, and their business dealings with the Company; (iv) non-published cost, pricing, sales and financial information, including budgets, projections, targets, revenues, margins and profits; (v) customer, supplier, vendor and other third-party contracts, negotiations, bids, proposals, needs and preferences; (vi) product development and testing information; (vii) technical information, including computer hardware and software, research and development, inventions, discoveries and other Company Intellectual Property (as defined in below); and (viii) personnel information, including compensation, benefits and performance evaluations, excluding such information pertaining to Employee.

(c) "Company Intellectual Property" means all proprietary plans, designs, processes, methods of operation, research and development, original works of authorship, product know-how and show-how, methodologies, techniques, inventions, discoveries, improvements, derivative works and any other intellectual property, whether or not patentable or copyrightable, that relates to the services conducted by the Company and that Employee makes, creates, authors, originates, conceives, develops or reduces to practice at any time during the Relationship.

(d) "Restricted Customer" means each and every person or entity with whom the Company has conducted business within the twelve (12) month period preceding termination of the Relationship and with whom Employee had business-related contact in the course of performing services on behalf of the Company or about which Employee acquired Company Confidential Information.

(e) "Restricted Person" means each and every person employed or otherwise engaged by the Company within the twelve (12) month period preceding termination of the Relationship and with whom Employee had supervisory responsibility or work-related contact in connection with performing services on behalf of the Company or about whom Employee acquired Company Confidential Information relating to the person's compensation, benefits or performance evaluations. Restricted Person does not include any person who is not employed or otherwise engaged by the Company at the time the Relationship is terminated.

(f) "Restricted Vendor" means each and every supplier or vendor with whom the Company has conducted business within the twelve (12) month period preceding termination of the Relationship and with whom Employee had business-related contact in the course of performing services on behalf of the Company or about which Employee acquired Company Confidential Information.

2. Non-Disclosure of Confidential Information.

(a) Employee will use Company Confidential Information exclusively on behalf of the Company and, except in the normal and proper course of performing services on behalf of Company, will not, directly or indirectly through another person or entity or by assisting others, disclose such information in any manner or use such information for Employee's benefit or on behalf of any third party. The foregoing obligation shall apply at all times during employment and for a period of five (5) years thereafter, unless such information qualifies as a trade secret, in which case the foregoing obligation shall continue for so long as the trade secret remains secret and protected under applicable law.

(b) Employee will not copy, duplicate or reproduce Company Confidential Information for any purpose other than for use by or on behalf of the Company, and will comply with all Company policies, procedures and practices pertaining to Company Confidential Information and take all commercially reasonable steps to protect and maintain the secrecy thereof.

(c) If Employee is requested, becomes legally compelled or is otherwise required by law to make any disclosure that is prohibited by this Section 2, Employee will promptly notify the Company no later than fourteen (14) days prior to such disclosure so that the Company may seek a protective order or other appropriate relief if the Company deems such protection necessary under the circumstances. Subject to the foregoing, Employee may furnish only that portion of Company Confidential Information that Employee is legally compelled or required by law to disclose.

(d) Notwithstanding anything herein to the contrary, the foregoing does not preclude Employee from disclosing truthful information regarding the Company to a federal, state or local governmental, regulatory or administrative agency concerning a suspected violation of law. Nor may Employee be held criminally or civilly liable under any federal or state trade secrets law for any disclosure of Company Confidential Information (i) made in confidence to a federal, state or local governmental, regulatory or administrative agency, or to an attorney, solely for the purpose of reporting or investigating a suspected violation of law, or (ii) set forth in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal and provided Employee does not otherwise disclose such information except pursuant

to court order. Nothing herein is intended, or should be construed, to affect the immunities created by the Defend Trade Secrets Act of 2016 or other applicable law.

3. Return of Company Property. Employee acknowledges that all documents (whether originals, copies or stored electronically), files, computer equipment, devices, credit cards, access cards, keys and all other material pertaining to the Company's business, which Employee acquires by virtue of employment, are the sole and exclusive property of the Company ("Company Property"). Employee will return all Company Property at any time during the Relationship upon request and immediately upon termination of the Relationship with or without request and will thereafter refrain from accessing any Company Confidential Information stored on any personal computer hard drive, tablet, smartphone, electronic data storage device, e-mail or other web-based data storage account or service. Employee will inform the Company of all such media and, upon direction from the Company, will permanently delete and erase any Company Confidential Information stored on such media and/or allow the Company (or its designee) to access and forensically examine such media to ensure that all Company Confidential Information has been permanently deleted and erased. Upon request from the Company, Employee shall certify in writing that Employee has fully complied with the obligations set forth in this Section 3.

4. Non-Competition. At all times during the Relationship and for a period of twelve (12) months thereafter, Employee will not, without the Company's prior written consent, directly or indirectly through another person or entity or by assisting others: (a) fund, own, invest in, set up or start a Competing Business located in the United States; or (b) become employed by, work for or otherwise provide services to or on behalf of a Competing Business, in the United States, to the extent such employment, work or services involves executive, management or sales responsibilities or duties. This Section 4 shall not prevent Employee from owning, for investment purposes, not more than three percent (3%) in the aggregate of any class of capital stock of any corporation if such stock is publicly traded and listed on any national or regional stock exchange.

5. Non-Solicitation/No-Service of Customers and Vendors. At all times during the Relationship and for a period of twelve (12) months thereafter, Employee will not, directly or indirectly through another person or entity or by assisting others: (a) solicit, call upon or contact any Restricted Customer or Restricted Vendor for the purpose of engaging in Competitive Business Activity; (b) contract with, sell to or perform services for or on behalf of a Restricted Customer or Restricted Vendor in connection with Competitive Business Activity; or (c) divert, interfere with, or attempt to divert or interfere with, the Company's business relationship with any Restricted Customer or Restricted Vendor.

6. Non-Solicitation/No-Hire of Restricted Persons. At all times during the Relationship and for a period of twelve (12) months thereafter, Employee will not, directly or indirectly, through another person or entity, or by assisting others: (a) solicit, induce or encourage any Restricted Person to terminate his or her employment or other association with the Company; or (b) hire or attempt to hire any Restricted Person on behalf of a person or entity engaged in Competitive Business Activity.

7. Tolling of Restrictive Periods. If Employee breaches any of the restrictions set forth in Sections 4 through 6 above and the Company commences a legal proceeding in connection therewith, the time period applicable to each such restriction shall be tolled and extended for a period of time equal to the period of time during which Employee is determined by a court of competent jurisdiction to be in breach (not to exceed twelve (12) months) commencing on the date of such determination.

8. Ownership of Intellectual Property.

(a) The Company owns all rights, title and interest in all Company Intellectual Property and Employee will have no right, title or interest therein or with respect to any patents, copyrights, trademarks or other rights associated therewith. Employee will assign and hereby irrevocably assigns to the Company any and all rights, title and interest that Employee may have or acquire in any Company Intellectual Property and all patents, copyrights, trademarks and other rights associated therewith. All copyrightable aspects of Company Intellectual Property are a "work made for hire" within the meaning of the Copyright Act of 1976, 17 U.S.C. § 101 et seq. and constitute the sole and exclusive property of the Company for all copyright terms, renewal terms and revivals thereof. If, for any reason, any Company Intellectual Property or any part or element thereof is found not to be a "work made for hire," Employee hereby irrevocably assigns to the Company all right, title and interest to such Company Intellectual Property.

(b) Any intellectual property that Employee, alone or with others, reduces to a tangible form or in which Employee pursues an interest or patent, copyright or trademark application in the twelve (12) month period following termination of the Relationship that was initially conceived or developed by Employee during the Relationship and/or by using or relying upon Confidential Information shall be covered by the foregoing assignment obligation.

(c) The foregoing assignment obligation does not apply to any invention that Employee develops entirely on Employee's own time without using Company equipment/supplies or Company Confidential Information, except for those inventions that: (i) relate to the business or other professional activities of the Company or its actual or demonstrably anticipated research or development; or (ii) results from any work performed by Employee for the Company. Employee will advise the Company promptly in writing of any patents, copyrights or trademarks, or applications therefor, or any other intellectual property conceived or developed by Employee, either alone or jointly with others, that Employee believes meets the qualifications for exclusion from assignment.

9. Reasonableness of Restrictions. Employee stipulates that the restrictions and obligations in this Agreement are reasonable (including the time periods, geographic scope and activity limitations) and necessary for the protection of the Company's legitimate business interests, do not prohibit Employee from using general skills and know-how acquired during or prior to employment with the Company, and do not preclude Employee from earning a livelihood, working in his or her chosen field or otherwise impose any undue hardship. Employee further stipulates that the geographic scope is necessary given that the Company conducts business throughout the United States in a specialized industry, regardless of whether it maintains a physical office in a particular location.

10. Additional Consideration. In addition to other good and valuable consideration given to Employee in connection with the Relationship and this Agreement, the Company agrees to make a one time, lump sum payment of Five Hundred Dollars and No Cents ($500.00) to Employee upon the Company's receipt of a signed copy of this Agreement by Employee.

11. Injunctive Relief. Employee acknowledges that irreparable harm will result to the Company if he or she violates any of the restrictions or obligations set forth herein and that, under such circumstances, the Company will have no adequate remedy at law. Therefore, in the event of any actual, anticipated or threatened breach of such restrictions or obligations, the Company will be entitled to specific performance and the immediate entry of injunctive relief without imposition of bond or other security. Such relief is in addition to all other remedies available to the Company by contract, at law or in equity. If the Company succeeds in securing relief for any actual, anticipated or threatened breach, Employee agrees he or she will pay all of the costs and expenses, including reasonable attorneys' fees, incurred by the Company in obtaining such relief.

12. Severability/Modification. In the event that any provision of this Agreement is deemed to be invalid or unenforceable, in whole or in part, by a court of competent jurisdiction for any reason, the remaining provisions shall continue to be valid and enforceable. In the event that any provision of this Agreement is declared by a court of competent jurisdiction to exceed the maximum time period, geographic scope or activity

limitation that such court deems reasonable and enforceable under circumstances then existing, the Parties authorize the court to modify and alter such provision so that it may be enforced to the maximum extent permitted by law.

13. Absence of Prior Restrictions. Employee represents and warrants that, except to the extent previously disclosed in writing to the Company, Employee is not bound by any agreement or contract provision that would restrict his or her performance of services on behalf of the Company. Employee further represents and warrants that, in the course of performing services on behalf of the Company, Employee will not disclose to the Company or use on behalf of the Company any confidential or proprietary information belonging to any prior employer or other third party. Employee will indemnify and hold the Company harmless from any claims, liabilities, losses, damages or costs and expenses, including reasonable attorneys' fees, the Company may incur as a result of any breach of the representations and warranties set forth in this Section 12.

14. Duty to Disclose. During employment with the Company and for a period of twelve (12) months thereafter, Employee will provide at least fourteen (14) days' advance written notice to the Company of any subsequent employment or business activity to be undertaken by Employee in the digital strategy, survey research and advocate acquisition services industry. Such notice shall include the name and address of Employee's employer, person or entity for whom he or she plans to provide services, as well as the nature of such association and Employee's position, duties and responsibilities. Employee will disclose the existence and terms of this Agreement to any such employer, person or entity. Employee also consents to the Company's notifying such employer, person or entity about his or her restrictions and obligations under this Agreement or pursuant to any other agreements between the Parties that contain similar restrictions or obligations.

15. Modification and Waiver. Except as set forth in Section 11, no provision of this Agreement may be modified, waived or discharged unless such modification, waiver or discharge is agreed to in writing by the Parties. The waiver by the Company of the breach of any provision of this Agreement by Employee shall not operate or be construed as a waiver of any subsequent or other breach.

16. Assignment and Successors. This Agreement may be transferred or assigned by the Company and shall otherwise inure to the benefit of, and be binding and effective upon, the Company's successors and assigns. Employee may not assign his or her rights or obligations hereunder without the written consent of the Company.

17. Choice of Law. This Agreement shall be governed by and construed in accordance with the substantive laws of the State of Delaware without giving effect to Delaware conflicts of law principles.

18. Counterparts and Electronic Copies. This Agreement may be executed in counterparts. Executed facsimile and/or .PDF transmissions of this Agreement shall be deemed originals and shall be fully enforceable.

19. Review. Employee acknowledges that he or she received advance written notice of this Agreement and that it is a condition of the Relationship. Employee has read all provisions contained herein and fully understands their meaning. Employee further acknowledges that the restrictions and obligations in this Agreement are legally binding and affirms that he or she shall comply therewith.

**IN WITNESS HEREOF**, the Parties have executed this Agreement as of the Effective Date.

**ADVOCACY HOLDINGS, INC.**

By: John Koepke

Printed Name: JOHN KOEPKE

Its: FOUNDER & CO-CHAIRMAN

**EMPLOYEE**

[signature] 7/15/2021

Printed Name: Chazz Clevinger

Address: 1204 G Street NE

Washington, DC 20002



VP/#37456715.1