THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

\+ + + + +

| | |
|---|---|
| IN THE MATTER OF:<br><br>CHAZZ CLEVINGER,<br><br>Plaintiff,<br><br>v.<br><br>ADVOCACY HOLDINGS, INC., and JOHN KOEPKE and RED CHALK GROUP, LLC, and RAYMOND ZENKICH,<br><br>Defendants. | Case No. 1:23-cv-1159 |
| ADVOCACY HOLDINGS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CHAZZ CLEVINGER, and CIVICLICK, INC., and SUPERIOR CAMPAIGN SOLUTIONS, LLC.,<br><br>Defendants. | |

Wednesday,
December 3, 2025

Washington, DC

DEPOSITION OF:
RAYMOND ZENKICH

APPEARANCES:

On Behalf of Plaintiff:

KENNETH E. CHASE, ESQ.
Chase Law & Associates
951 Yamato Road
Suite 280
Boca Raton, FL 33431
kchase@chaselaw.com

On Behalf of Defendant:

ANAND V. RAMANA, ESQ.
Vedder Price
1401 New York Avenue NW
Suite 500
Washington, DC 20005
aramana@vedderprice.com

ALSO PRESENT:

CHAZZ CLEVINGER, Plaintiff

P-R-O-C-E-E-D-I-N-G-S

10:20 a.m.

COURT REPORTER: We are now on the record. Here begins the deposition of Raymond Zenkich, taken in the matter of Chazz Clevinger v. Advocacy Holding Inc. et al., case number 123-CV-1159-JMC/GMH. We are located at 1015 15th Street, Northwest, on the 6th floor. My name is Manny Siskind. I am the court reporter from Veritext. Today’s date is December 3rd, 2025, and the time is now 10:20 a.m. Would all present please introduce themselves and who you represent for the record?

MR. CHASE: Present for the Plaintiffs, or the Plaintiff, Kenneth Chase, Chase Law and Associates. With me is Chazz Clevinger, on behalf of the parties that we’ll describe as the Clevinger Parties. The Clevinger Parties are Chazz Clevinger, CiviClick, and Superior Campaign Solutions. Go ahead.

MR. RAMANA: Anand Ramana from Vedder Price on behalf of Mr. Zenkich.

COURT REPORTER: I’m going to swear our witness here. Raise your right hand. Do you swear or affirm that the testimony you are about

to give is the truth, the whole truth, and nothing but the truth?

THE WITNESS: Yes.

WHEREUPON,

RAYMOND ZENKICH

was called as a witness by Counsel for the Plaintiff, and after having been first duly sworn, was examined and testified as follows:

COURT REPORTER: All right, then we are going to proceed.

MR. CHASE: Good morning, sir. How are you today?

THE WITNESS: Morning.

DIRECT EXAMINATION

BY MR. CHASE:

Q Have you previously given a deposition?

A Yes.

Q How many times?

A Three?

Q Before we begin, can you state your name and spell it for the record?

A It’s Raymond Zenkich. First name R-A-Y-M-O-N-D, last name Zenkich, Z-E-N-K-I-C-H.

Q On the prior occasions on which you’ve given a deposition, what was the most recent

THE WITNESS: There were assets and liabilities.

MR. CHASE: Okay, were those assets and liabilities essentially a wash?

THE WITNESS: No, I don't believe so. I believe there were outstanding, I believe, payments that the Red Chalk Group was still incurring, I believe. Mr. Koepke would be closest to the finances, but I don't know. I don't believe it was a wash.

BY MR. CHASE:

Q Okay. Which side got more assets in return? The side that Red Chalk Group was transferring to Advocacy Holdings, or the side that Advocacy Holdings was transferring to Red Chalk Group?

A Advocacy Holdings transferred nothing to Red Chalk Group.

Q Okay, so there's no consideration?

MR. RAMANA: Objection, calls for a legal conclusion. Go ahead.

THE WITNESS: Advocacy Holdings transferred nothing, to my knowledge, to Red Chalk Group.

MR. CHASE: Okay. Was there any

be appropriate for someone to be subject to a hostile work environment, and if they leave the hostile work environment. If they leave the hostile work environment, then they should be subject to a non-compete, too. You're okay with that?

MR. RAMANA: Objection. Compound.

BY MR. CHASE:

Q You are? Okay. You're okay with that? So if you, if for some reason, Mr. Koepke were to turn on you and start subjecting you to a hostile work -- well, did you sign a non-compete with Advocacy Holdings?

A I don't believe so.

Q How come you made Mr. Clevinger? He was going to be an owner, right?

A And an officer, yes.

Q Yeah, why did you make him sign a non-compete?

A And that was actually critical, and he acknowledged this, because in a situation where we're being acquired, any buyer was going to want to make sure that all the employees have a non-compete in place.

Q You made Mr. Clevinger sign a non-

compete for the buyer's benefit?
A No, for all the shareholder's benefit, to get a great price when you're selling.
Q Did you have any buyers?
A The goal was to sell the company.
Q Did you have any buyers?
A No, that was one of the reasons we actually set up the company outside of Red Chalk Group, to set it up for sale.
Q Have you ever received an offer?
A Yes.
Q When?
A Maybe a year ago.
Q Okay, and what was the offer?
A I'm not going to disclose that.
Q It wasn't the valuation that you told Mr. Clevinger, was it? Nothing near that, right? That wasn't accurate, was it?
A What's your question?
Q Is the offer reflective of the actual market price that an actual person would pay to acquire advocacy?
MR. RAMANA: Object. Hold on. Objection. Calls for speculation. Calls for expert testimony. Go ahead.

CEO?
A At that point in time it wasn't really necessary to have like a full-time, the business couldn't afford a full time CEO.
Q What would have been different to just aggregate that title in an email? Signature block.
A I'm sorry, I don't understand your question.
Q When Ms. Clevinger was made the CEO, correct, we've established that he was not made the CEO as a director, correct?
A Yes.
Q Okay. We've also established, correct me if this hasn't been the testimony yet, was he ever established as the CEO as an officer?
A Yes. In the title it's, yes, chief executive officer.
Q Okay. But what did officer mean? Is there a definition of what that means?
A I mean, for me it's someone who can contract on the part of the business.
Q Okay. A VP of something cannot contract on the part of the business?
A No. Yes, a VP of sales can also be an

officer.

Q Okay. So what's the definition of officer?

A Again, to me it's just a very simple definition of being able to contract, act as the face of, or sort of -- on behalf of the company, right? Have customer discussions, talk to vendors. Even sign contracts where appropriate.

Q Okay. At no point was Mr. Clevinger ever identified in any Secretary of State filing as a owner, director or officer, correct?

A Correct.

Q Okay. Why?

A Because he wasn't.

Q So he was not an owner, director or officer?

A He was, again, you're talking about One Click Politics prior to 2020.

Q Ever?

A Well you preferenced a set of questions with that --

Q Sure. Sure.

A -- so.

Q I'm going to broaden it.

A Okay.

capital contributions when he's a non-voting shareholder? Where does it say that?

A I don't know.

Q Does it say that anywhere?

MR. RAMANA: Asked and answered.

THE WITNESS: I don't know.

BY MR. CHASE:

Q So he basically gets his equity, and then he gets hit with five capital contributions in the next 12 months. Is that right?

A All of the shareholders, myself, Mr. Koepke, and Jasper, hit, I would agree, with capital contributions because of the poor performance of the business.

Q The poor performance, okay.

A Yeah.

Q So how many capital calls were there when the company was making let's say $50,000?

A I don't know how many. It's impossible for me to answer that question.

Q Were there any capital calls prior to Mr. Clevinger's share ownership?

A Of Advocacy Holdings?

Q No. Were there any capital calls of Red Chalk prior to Mr. Clevinger's share

C E R T I F I C A T E

This is to certify that the foregoing transcript was duly recorded and accurately transcribed under my direction; further, that said transcript is a true and accurate record of the proceedings; and that I am neither counsel for, related to, nor employed by any of the parties to this action in which this matter was taken; and further that I am not a relative nor an employee of any of the parties nor counsel employed by the parties, and I am not financially or otherwise interested in the outcome of the action.



Manny Siskind