**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CHAZZ CLEVINGER,<br><br>*Plaintiff*,<br><br>v.<br><br>ADVOCACY HOLDINGS, INC., and JOHN KOEPKE, and RED CHALK GROUP, LLC, and RAYMOND ZENKICH,<br><br>*Defendants*. | Case No. 1:23-cv-1159 (JMC) |
| ADVOCACY HOLDINGS, INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>CHAZZ CLEVINGER, and CIVICLICK, INC., and SUPERIOR CAMPAIGN SOLUTIONS, LLC,<br><br>*Defendants*. | Case No. 1:23-cv-1176 (JMC) |

**DECLARATION OF JOHN KOEPKE**

I, John Koepke, being of lawful age and duly sworn, state as follows:

1. I am a founder, Co-Chairman, Principal, and co-owner of Advocacy Holdings, Inc., which does business as OneClickPolitics ("Advocacy Holdings"). I have personal knowledge of the matters stated in this declaration through my responsibilities as an owner of Advocacy Holdings

2. In that role, I am familiar with Advocacy Holdings' customer relationships, subscription business, sales and marketing functions, revenues and expenses, and the costs

associated with providing its web-based software and related services.

3. I am familiar with Advocacy Holdings' business records and recordkeeping practices, including its customer lists, invoices, payment records, and customer-subscription records. Those records are created and maintained in the ordinary course of business at or near the time of the transactions they reflect, based on information recorded by persons with knowledge.

4. I reviewed Advocacy Holdings' customer list, attached as **Exhibit 1**, and the Advocacy Holdings customer invoices and payment records submitted as Exhibit 13 to the summary-judgment motion. Those documents are true and correct copies of records maintained by Advocacy Holdings in the ordinary course of business.

5. **Exhibit 1** is a true and correct copy of Advocacy Holdings' customer list, produced at OCP0000209–OCP0000220.

6. Advocacy Holdings provides web-based digital-advocacy software and advocate-acquisition services through subscriptions for defined terms, typically annual or multi-year terms. A number of the customers identified in Exhibit 1 renewed their subscriptions for successive terms.

7. During Chazz Clevinger's ("Clevinger") tenure as Chief Executive Officer, he managed Advocacy Holdings' sales, marketing, customer service, product management and design, employee hiring, employee relations, technology, and overall business strategy functions. He was involved in virtually all customer relationships, customer contract discussions, pricing, and business development.

8. Advocacy Holdings had 138 paying customers in 2020, 246 paying customers in 2021, and 200 paying customers in 2022. During the year preceding Clevinger's February 1, 2023 departure, Advocacy Holdings maintained invoiced customer relationships with 197 customers.

9. I reviewed customer information produced by Clevinger, CiviClick, and SCS and

compared it with Advocacy Holdings' customer and subscription records, including Exhibit 1.

10. The Clevinger Parties identified 81 CiviClick and SCS customers and affiliated entities in their supplemental response to Interrogatory No. 3. (Clevinger Apr. 2, 2025 Suppl. Interrog. Resps., Ex. 10 to Advocacy Holdings' Br., at Resp. No. 3, pp. 12–15.) Based on my comparison, 42 were Advocacy Holdings customers during the year preceding Clevinger's departure.

11. I am familiar with CiviClick and SCS and the services they have offered based on my Advocacy Holdings responsibilities and my review of records produced in this litigation. CiviClick offers digital advocacy software and advocate acquisition services that compete with Advocacy Holdings. SCS has offered client acquisition and marketing services that compete with services Advocacy Holdings provides.

12. CiviClick and SCS compete with Advocacy Holdings for digital advocacy, advocate acquisition, client acquisition, and related customer business.

13. During 2022 and 2023, Advocacy Holdings provided client acquisition and marketing services, including services designed to identify and recruit advocates or other responsive individuals for customer campaigns.

14. Advocacy Holdings had the personnel, technology, and experience to perform client-acquisition and marketing work of the type SCS performed in connection with Camp Lejeune claims.

15. Advocacy Holdings operates a Software-as-a-Service ("Saas") business. Its digital advocacy platform is hosted on centralized cloud servers and licensed over the internet on a recurring subscription basis. A single platform version serves multiple customers, so adding a customer does not require recreating the platform or purchasing a physical product.

16. Most costs associated with operating and maintaining the platform are incurred regardless of whether any particular customer purchases or maintains a subscription.

17. Advocacy Holdings spends approximately $10,000 per month on Amazon Web Services to support approximately 200 customers, but at least half would be incurred even with no customers. I estimate approximately $25 per month in incremental cloud-hosting expense for an additional customer.

18. Advocacy Holdings incurs approximately $4,000 per month 25 to deliver advocacy messages through its platform. I estimate approximately $25 per month in incremental message delivery expense for an additional customer.

19. One Advocacy Holdings employee provides customer support for approximately 150 customers at an annual salary of approximately $120,000. That employee could support at least 100 additional customers without additional customer support personnel.

20. Based on those expenses and Advocacy Holdings' actual operations, I estimate approximately $500 to $600 per year in incremental cost to serve each additional customer.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed: 11/24/2026

John Koepke (signature)
John Koepke

# EXHIBIT 12-1

# FILED UNDER SEAL